106 F.3d 135
 115 Ed. Law Rep. 650, 12 IER Cases 773
 Sidney Jane BAILEY, Plaintiff-Appellant,
v.
FLOYD COUNTY BOARD OF EDUCATION, by and through its members;
Stephen TOWLER, individually and in his official capacity
as Superintendent of the Floyd County Schools; Big Sandy
Area Community Action Program, Inc.; Eddie Billips, as a
member of the Floyd County Board of Education; Brent Clark,
as a member of Floyd County Board of Education; Robert D.
Isaac, as a member of the Floyd County Board of Education;
Patty C. Owens, as a member of the Floyd County Board of
Education; and Edward Patton, Chairperson of the Floyd
County Board of Education, Defendants-Appellees.
 No. 95-6212.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 22, 1996.
Decided Jan. 30, 1997.
 
 Lawrence R. Webster (argued and briefed), Webster & Lucas, Pikeville, KY, for Plaintiff-Appellant.
 Clifford B. Latte, Latta & Brown, Prestonburg, KY, William H. Fogle (argued and briefed), Moore & Fogle, Mt. Sterling, KY, for Defendants-Appellees Floyd County Bd. of Educ., Stephen Towler, Eddie Billips, Brent Clark, Robert D. Isaac, Patty C. Owens and Edward Patton.
 W. Kenneth Nevitt, R. Thaddeus Keal (briefed), Sun S. Choy, Annette C. Karem (argued), Williams & Wagoner, Louisville, KY, for Defendant-Appellee Big Sandy Area Community Action Program, Inc.
 Before: MERRITT, BROWN, and NELSON, Circuit Judges.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 After being dismissed from her position as Floyd County's Head Start Director, Sidney Jane Bailey filed a section 1983 action against the Floyd County Board of Education, individual members of the Board in their official capacities,[1] Dr. Stephen Towler both as an individual and in his official capacity, and Big Sandy Area Community Action Program, Inc. (Big Sandy) for alleged violations of her due process and First Amendment rights. In response, the defendants contend that Bailey's dismissal resulted from substance abuse and financial improprieties and that Bailey was afforded all the process due her. Following cross-motions for summary judgment, the district court granted the defendants' motions and denied Bailey's. On appeal, Bailey contests the district court's grant of summary judgment in favor of the defendants. Having considered Bailey's arguments, we AFFIRM the district court's decision.
 
 I. FACTS AND BACKGROUND
 
 2
 Head Start is a federally-funded program that provides educational and social services to low-income families and their children. Head Start Act, 42 U.S.C. §§ 9831 et seq. (1994). To operate the program in particular areas, the Health and Human Services Department (HHS) provides annual grants to approved agencies, known as "grantee agencies." 45 C.F.R. § 1301.2. In turn, with the approval of the HHS, the grantee agency may delegate all or part of its responsibilities for operating the program to a "delegate agency" in a particular locality. Id.
 
 
 3
 HHS designated Big Sandy as the grantee agency for an area that included Floyd County, Kentucky. Big Sandy is a "community action agency," meaning a non-profit corporation "organized for the purpose of alleviating poverty within a community or area by developing employment opportunities; by bettering the conditions under which people live, learn, and work; and by conducting, administering, and coordinating similar programs." KY.REV.STAT. ANN. § 273.410(2) (Michie 1989). Subsequently, Big Sandy delegated the responsibility for operating the Head Start program in Floyd County to the Floyd County Board of Education. The terms of this assignment are embodied in the Agreement for Delegation of Activities (Delegation Agreement), pursuant to which, Big Sandy agreed to provide Head Start funds to Floyd County and, in return, Floyd County agreed to use the funds in the manner specified in the Delegation Agreement, including complying with the Head Start Policy Manual (HSPM). The HSPM is a federally-issued manual that assists local Head Start programs in providing parents with the opportunity meaningfully to participate in administering Head Start programs at the local level. For instance, according to section 70.2 of the HSPM, a program's Head Start Director can be dismissed only with the approval of the Policy Committee, an advisory body composed of parents participating in the program.
 
 
 4
 The HSPM was not the only guide pertinent to Floyd County. During the course of operating the program, the Board of Education adopted the Floyd County Head Start Personnel Policies (FCHSPP) manual. The FCHSPP manual is an employee manual that sets forth policies and procedures relating to personnel matters. Although the FCHSPP manual is specific to Floyd County, it is modeled after a generally-applicable employee handbook provided by the regional Head Start office. In addressing disciplinary issues, the manual affords to Head Start employees a four-step appeals process: The employee appeals (1) to his or her immediate supervisor; then (2) to the Floyd County Head Start Director; then (3) to the Floyd County Policy Committee; and finally (4) to Big Sandy. Joint Appendix at 120-22. The appeal to Big Sandy, however, is limited to alleged procedural errors.
 
 
 5
 In Kentucky, the appointment, assignment, and transfer of administrative personnel are functions of the superintendent of schools. KY.REV.STAT. ANN. §§ 160.380(2)(a), 160.390 (Michie 1994 & Supp.1996). On August 12, 1986, the superintendent of Floyd County schools hired Bailey as the Head Start Director for Floyd County's Head Start program for the coming school year. In that capacity, Bailey was responsible for administering the Head Start program in the county. Each year, the superintendent would issue a letter to Bailey, inviting her to retain her position for the upcoming school year. Prior to her dismissal, Bailey had received a letter from Superintendent Towler, dated July 9, 1993, assigning Bailey to the position of Head Start Director for the 1993-94 school year.
 
 
 6
 In the Summer of 1993, Assistant Superintendent Gary Frazier, Bailey's immediate supervisor, notified the Kentucky Office of Education Accountability (OEA) of possible improprieties involving Bailey, as well as other Head Start employees. The OEA concluded, based on evidence discovered during the ensuing investigation, that Bailey had smoked marijuana and consumed alcohol while on Head Start time, misspent Head Start funds, and used the Head Start van for unauthorized purposes. Bailey contests these findings.
 
 
 7
 Superintendent Towler, based on an initial meeting with OEA investigators, suspended Bailey without pay on July 28, 1993. After the OEA completed its investigation and forwarded its report, Superintendent Towler commenced disciplinary action against Bailey. On September 3, 1993, Superintendent Towler and Deputy Superintendent Frazier presided over the Policy Committee meeting. According to Bailey, Superintendent Towler notified her of the Committee meeting one day before it was to take place, too soon for Bailey to arrange counsel and prepare a meaningful defense. She contends that Towler failed to notify her that her employment status would be discussed at the meeting or that the OEA report contained allegations of misconduct against her. After allegedly denying Bailey's requests to postpone the meeting and to allow her to examine the OEA report, Towler reviewed and discussed the report with the Committee. Thereafter, the Committee voted unanimously to terminate Bailey. According to Bailey, however, the Committee reached its conclusion without a quorum of its members present and as a result of Superintendent Towler's intimidation. Bailey petitioned Big Sandy to review the Policy Committee's decision, alleging procedural errors in connection with the Committee meeting and, in particular, the failure to comply with the disciplinary process set forth in the FCHSPP manual. In response, Big Sandy upheld Superintendent Towler's decision.
 
 
 8
 Bailey subsequently commenced this section 1983 action, arguing (1) that she had a property interest in her position as Head Start director by virtue of an implied contract arising from Floyd County's adoption of the FCHSPP manual; (2) that she was deprived of property without due process of law because, prior to her dismissal, she was given neither effective notice of the Policy Committee meeting nor a meaningful opportunity to be heard; and (3) that her dismissal stemmed, not from improper conduct, but rather, from exercising her right to free speech. She contends that Assistant Superintendent Frazier and Superintendent Towler initiated the OEA investigation and the subsequent disciplinary proceedings in retaliation for her open opposition to the school board's proposed district-wide reorganization of the Floyd County Head Start Program.[2] In Bailey's opinion, if the school board went ahead with its plan to integrate Head Start into the schools, parental participation would decline because the parents would feel intimidated in the new situation. Bailey advocated her position in letters written to school board members and during the public comment section of the May 26, 1993, school board meeting. Bailey's only evidence in support of this claim is her own deposition testimony in which she alleges that Ernestine Shelton, a Head Start instructor, telephoned Bailey a day or two prior to the school board meeting and delivered "a little message ... from Gary Frasure (sic), that if I would keep my mouth shut then I would get to keep my job." J.A. at 157; Brief for Appellant at 33.
 
 
 9
 Following cross-motions for summary judgment, the district court dismissed Bailey's entire case against all of the defendants in two separate orders. First, the district court dismissed Bailey's only claim against Big Sandy, a due process claim, because the court found that Bailey had failed to establish a constitutionally protected interest in her job. Next, the district court dismissed Bailey's due process and First Amendment claims against Defendant Towler and the School Board defendants. In so doing, the district court relied on its earlier reasoning with respect to Bailey's due process claim against Big Sandy and further determined that Bailey had presented insufficient evidence to survive the defendants' motion for summary judgment on her First Amendment theory. Additionally, the court ruled that Defendant Towler was entitled to qualified immunity and that the School Board was not entitled to immunity under the Eleventh Amendment.
 
 
 10
 On appeal, Bailey challenges the district court's grant of summary judgment in favor of the defendants.
 
 II. ANALYSIS
 
 11
 We review a grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate when the pleadings, affidavits, and other submissions show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). We review the evidence in a light most favorable to and draw any inferences in favor of the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88, 106 S.Ct. 1348, 1356-57, 89 L.Ed.2d 538 (1986). The moving party need not support its motion with evidence disproving the nonmoving party's claim, but need only show that "there is an absence of evidence to support the nonmoving party's case." Michigan Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir.1994) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)). The nonmovant then must counter with more than a scintilla of evidence in support of his or her position; the evidence must be such that a jury could reasonably find for that party. Michigan Protection and Advocacy Serv., Inc., 18 F.3d at 341 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)); accord Harrow Prods., Inc. v. Liberty Mut. Ins. Co., 64 F.3d 1015, 1019 (6th Cir.1995).
 
 
 12
 With that standard in mind, we turn to Bailey's section 1983 action. Section 1983 creates a federal cause of action to redress violations of rights protected by the Constitution or laws of the United States. 42 U.S.C. § 1983; Simescu v. Emmet County Dep't of Soc. Servs., 942 F.2d 372, 374 (6th Cir.1991) (citing Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)). In the instant case, Bailey bases her claim on alleged deprivations of rights secured by the Constitution. In assessing Bailey's claim, we begin with her allegations with respect to due process and, thereafter, consider her First Amendment claim.
 
 A. PROCEDURAL DUE PROCESS
 
 13
 The Fourteenth Amendment prohibits state actors from depriving an individual of life, liberty, or property without due process of law. U.S. CONST. amend. XIV. This case addresses the "property" component of the Due Process Clause.
 
 
 14
 Bailey argues that the process afforded to her by the defendants was constitutionally inadequate. To prevail on her claim, Bailey must first establish that she enjoyed a property interest in her position as Head Start Director. According to Cleveland Bd. of Educ. v. Loudermill, government employees with a protectable property interest in their jobs are ordinarily entitled to pre-deprivation notice of the charges, an explanation of the employer's evidence, and an opportunity to present their account of the events. 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985); Buckner v. City of Highland Park, 901 F.2d 491, 494 (6th Cir.1990). Absent a property interest in her position, however, Bailey was not entitled to any pre-deprivation process whatsoever. Williams v. Commonwealth of Kentucky, 24 F.3d 1526, 1537 (6th Cir.1994).
 
 
 15
 The existence of a property interest depends largely on state law. Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); Bishop v. Wood, 426 U.S. 341, 344-45, 96 S.Ct. 2074, 2077-78, 48 L.Ed.2d 684 (1976); Arnett v. Kennedy, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Government employment amounts to a protected property interest when the employee is "entitled" to continued employment. Roth, 408 U.S. at 577, 92 S.Ct. at 2709; Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Neither mere government employment nor an abstract need or desire for continued employment will give rise to a property interest. Roth, 408 U.S. at 577, 92 S.Ct. at 2709; Gregory v. Hunt, 24 F.3d 781, 787 n. 4 (6th Cir.1994). Rather, a property interest exists and its boundaries are defined by "rules or understandings that stem from an independent source such as state law--rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Roth, 408 U.S. at 577, 92 S.Ct. at 2709. Thus, to establish a protected interest in her position as Head Start Director, Bailey must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment.
 
 
 16
 Under Kentucky law, certain employees enjoy property interests in their positions by statutory grant. For instance, under Kentucky's classified service, classified employees with status enjoy property interests in their jobs. KY.REV.STAT. ANN. § 18A.095(2) (Michie 1996); Williams, 24 F.3d at 1537-38 & n. 4. Likewise, certified school employees are entitled to tenure under the Kentucky Teacher Tenure Act and, therefore, can support a legitimate claim of entitlement in their positions. See KY.REV.STAT. ANN. § 161.720-.810 (Michie 1994). Bailey does not qualify for the protection of the classified service or the Kentucky Teacher Tenure Act, and no analogous statute exists to grant a similar claim of entitlement to Bailey. Cf. Hooks v. Smith, 781 S.W.2d 522, 523-24 (Ky.Ct.App.1989) (finding that the procedural safeguards provided for non-tenured administrators under KY.REV.STAT. § 161.765 do not create a protectable property interest). Consequently, Bailey cannot claim a property interest in her position as Head Start Director by operation of a statute.
 
 
 17
 Absent such a statute, Bailey may nevertheless claim a property interest in her job if such an interest is conferred by contract. In Kentucky, unless the parties specifically manifest their intention to condition termination only according to express terms, employment is considered "at will." Shah v. American Synthetic Rubber Corp., 655 S.W.2d 489, 491 (Ky.1983); Nork v. Fetter Printing Co., 738 S.W.2d 824, 826-27 (Ky.Ct.App.1987); see Grzyb v. Evans, 700 S.W.2d 399 (Ky.1985) (explaining Kentucky's "at will" doctrine). An at-will employee is subject to dismissal at any time and without cause; consequently, an at-will employee cannot effectively claim a protectable property interest in his or her job. However, the parties to an employment contract can make the employment relationship terminable only for cause "by clearly stating their intentions to do so...." Shah, 655 S.W.2d at 492. In this manner, a property interest in a government job may arise. Initially, when the superintendent for Floyd County hired her in 1986, Bailey was an at-will employee. Relying on Shah, Bailey argues that her initial at-will relationship was later modified to a "for cause" relationship by virtue of the FCHSPP manual and also by the letter of appointment for the 1993-94 school year from Superintendent Towler.[3]
 
 
 18
 In Shah, the Kentucky Supreme Court held that an employer's policies and procedures may establish a "for cause" relationship in certain instances. 655 S.W.2d at 492. In reaching this determination, the court found that the parties specifically contracted for employment terminable only for work-connected cause and that the employer's policies induced the plaintiff to accept a position with the company. Id. at 491-92. In Nork, the Kentucky Court of Appeals considered three different factual situations in which the discharged employees attempted to take advantage of the Shah doctrine by alleging "for cause" contracts due to their employee handbooks. Nork, 738 S.W.2d at 824-27. The intermediate court found that the language in the handbooks did not modify the contractual relationships at issue, either because the handbook effectively disclaimed any intent to contract or because the relied upon language (i.e., conditioning employment on "successful performance") was insufficient to elevate the plaintiff's employment status. Id. at 825, 827; accord McCart v. Brown-Forman Corp., 713 F.Supp. 981, 983 (W.D.Ky.1988) (determining that an employee manual furnished a framework to evaluate employee performance, but did not supersede plain language in employee's application). Conversely, a divided panel of the intermediate appellate court found that an employee handbook successfully modified an at-will relationship when (1) the employee was obligated to sign the handbook, accepting the conditions of employment contained therein; (2) the handbook described a probationary period during which time the employee could be dismissed for any reason whatsoever; (3) the handbook included warning and counseling systems; and (4) the handbook did not contain a disclaimer similar to the one discussed in Nork. Norris v. Filson Care Home Ltd., No. 89-CA-0599-MR, 1990 WL 393903, at * 3-4 (Ky.Ct.App. Jan.26, 1990).
 
 
 19
 In the present case, the FCHSPP manual states a general policy against discharging employees, except "for cause" and after the employee is given the opportunity to respond to alleged wrongdoings. J.A. at 86, 120-22. The absence of a disclaimer, coupled with the "for cause" language, perhaps sends a conflicting signal to the Head Start program's otherwise at-will employees. See Shah, 655 S.W.2d at 492; Norris, 1990 WL 393903, at * 4. Nevertheless, the terms of employment contracts depend upon the understanding of the parties as "ascertained by inference from their written or oral negotiations and agreements, the usage of business, the situation and objectives of the parties, the nature of the employment, and all circumstances surrounding the transaction." Shah, 655 S.W.2d at 490 (citing Putnam v. Producers' Live Stock Mktg. Ass'n, 256 Ky. 196, 75 S.W.2d 1075, 1076 (1934)).
 
 
 20
 The circumstances surrounding Bailey's employment indicate that the handbook was not intended to affect her employment relationship with Floyd County. In particular, there is no indication that Floyd County's policies induced Bailey to accept or retain her position as Head Start Director. Whereas the policies at issue in Shah formed the basis of that plaintiff's bargain with his employer, 655 S.W.2d at 492, there is no indication in the record that Floyd County had an employee manual when Bailey was hired as Head Start Director in 1986. Subsequent to accepting her position and acting on behalf of Floyd County, Bailey acquired a model handbook from the regional Head Start authority and customized it for use in Floyd County, including drafting the manual's introductory statement to the program's supervisors. J.A. at 147-48. In that statement, Bailey refers to the FCHSPP manual, not in terms evincing a change in employment status, but as a "guide and reference" and a collection of "ideas and principles." J.A. at 63. Bailey's role in acquiring and issuing the manual for Floyd County's employees strongly suggests that Floyd County never intended for the manual to assume contractual significance with respect to her.
 
 
 21
 Moreover, language in the manual itself indicates that it was not intended to apply to Bailey. For instance, Bailey alleges that her dismissal was not preceded by the requisite process as provided in the FCHSPP manual's disciplinary protocol. That protocol, however, affords Head Start employees an appeal from their immediate supervisors to the Head Start Director. If the manual was intended to modify Bailey's employment contract, we would expect to find a provision that would give Bailey the right to appeal to someone other than herself when confronting disciplinary action. The absence of such a provision weakens Bailey's assertion that the FCHSPP manual modified her contractual relationship with Floyd County. Bailey's argument might be saved if evidence in the record revealed that her employer construed the FCHSPP manual in a manner that would make it applicable to her. See Perry, 408 U.S. at 602, 92 S.Ct. at 2700 (finding property interest where supported by "other agreements implied from the [employer's] words and conduct in the light of the surrounding circumstances"). The record, however, contains scant evidence to support such a theory. Bailey's career as Head Start Director spanned seven years and yet she can adduce no evidence to support a practical construction of the FCHSPP manual in her favor other than the fact that Superintendent Towler consulted the FCHSPP manual for guidance and attempted to provide Bailey with procedures analogous to those afforded to other employees prior to commencing action against her. Superintendent Towler's one-time consultation does not affect our conclusion that the FCHSPP manual was not intended, and could not reasonably be understood, to affect Bailey's at-will employment status and, therefore, is incapable of giving Bailey a property interest in her position as Head Start Director.
 
 
 22
 Bailey also purports to establish a property interest in her position on the strength of the letter of appointment for the 1993-94 school year, arguing that the letter raises a genuine issue as to the existence of a one-year employment contract. Although the letter is part of the record on appeal, Bailey failed to argue its significance to the district court--that an employee enjoys a property interest in his or her employment for the duration of a fixed-term employment contract. Ramsey v. Whitley County Board of Education, 844 F.2d 1268, 1274 (6th Cir.1988); Moore v. Warwick Pub. Sch. Dist. No. 29, 794 F.2d 322, 326 (8th Cir.1986). Prior to this appeal, Bailey maintained only that her property interest stemmed from the terms embodied in the FCHSPP manual. Now, for the first time, Bailey characterizes the letter of appointment from Superintendent Towler as a contract for employment that grants her "tenure" for the duration of the 1993-94 school year. For Bailey to come now and attempt to conjure a viable legal theory from a document in the record is at odds with the purpose of summary judgment as a device for filtering out insupportable legal issues at an early stage in the proceedings. It is well-settled that this court will not consider arguments raised for the first time on appeal unless our failure to consider the issue will result in a plain miscarriage of justice. Roush v. KFC Nat'l Management Co., 10 F.3d 392, 397 (6th Cir.1993); United States v. Pickett, 941 F.2d 411, 415 (6th Cir.1991); Boone Coal and Timber Co. v. Polan, 787 F.2d 1056, 1064 (6th Cir.1986). Notably, during Bailey's deposition, opposing counsel asked Bailey whether the alleged employment contract arising under the FCHSPP manual was her only contract, and Bailey replied, "I guess. I was at their mercy." J.A. at 139. It is difficult to reconcile Bailey's initial position that she had no other contract with Floyd County other than the one contained in the policy and procedure manual with her subsequent contention that a genuine issue of material fact exists as to whether the letter of appointment amounts to a one-year contract. Thus, we find that the circumstances in this case are not so exceptional as to warrant our considering Bailey's new theory.[4]
 
 
 23
 We conclude that, inasmuch as Bailey was a non-tenured employee under Kentucky law with no contractual right to continued employment, she failed to establish a property interest protected by the due process clause.
 
 B. FIRST AMENDMENT
 
 24
 Bailey also seeks relief for alleged First Amendment violations committed by Superintendent Towler and the School Board defendants. Bailey claims that she was discharged in retaliation for her open opposition to the proposed reorganization of the Head Start Program.
 
 
 25
 We test alleged First Amendment violations under the two-stage inquiry set forth in Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Pursuant to this test, the employee must first establish that her speech was constitutionally protected. Id. at 287, 97 S.Ct. at 576; Langford v. Lane, 921 F.2d 677, 680 (6th Cir.1991); see Connick v. Myers, 461 U.S. 138, 148 n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983). Speech is protected when it addresses a matter of public concern, and the employee's interest in making such statements outweighs the "interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968); Rahn v. Drake Ctr., Inc. 31 F.3d 407 (6th Cir.1994); Williams, 24 F.3d at 1534. If able to so demonstrate, the plaintiff then has the burden of showing that the speech was a "substantial" factor--a "motivating" factor--in the employer's decision to terminate his or her employment. Mount Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Langford, 921 F.2d at 683.[5] Having concluded that the resolution of this appeal turns on the second part of the Mount Healthy test, we will assume that Bailey's speech as it related to the reorganization of the Head Start program was constitutionally protected.
 
 
 26
 The second part of the Mount Healthy test addresses causation and requires the employee to show that he or she was discharged due to speech addressing a matter of public concern. Rankin v. McPherson, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); Langford, 921 F.2d at 680; see Collyer v. Darling, 98 F.3d 211, 228-29 (6th Cir.1996). It follows, therefore, that the employee must point to " 'specific, nonconclusory allegations' reasonably linking her speech to employer discipline." See Wright v. Illinois Dep't of Children & Family Servs., 40 F.3d 1492, 1500 (7th Cir.1994) (citations omitted). Thus, when opposing a motion for summary judgment, the nonmoving party may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent. Collyer, 98 F.3d at 229 (citing Wright, 40 F.3d at 1500). Rather, the employee must link the speech in question to the defendant's decision to dismiss her. Wright, 40 F.3d at 1500. That is, Bailey must present evidence sufficient to create a genuine issue that her speech caused her discharge. FED.R.CIV.P. 56; Mount Healthy, 429 U.S. at 287, 97 S.Ct. at 576. Ordinarily, causation is a question to be resolved by a jury. Matulin v. Village of Lodi, 862 F.2d 609, 613 (6th Cir.1988). A court may nevertheless grant summary judgment on the issue of causation when warranted. Hartsel v. Keys, 87 F.3d 795, 803 (6th Cir.1996) (citing Langford, 921 F.2d at 683), cert. denied, --- U.S. ----, 117 S.Ct. 683, 136 L.Ed.2d 608 (1997).
 
 
 27
 The district court found that Bailey had failed to produce even a scintilla of evidence connecting her speech with the decision to terminate her. On appeal, perhaps recognizing that post hoc, propter hoc reasoning alone will not defeat the defendant's motion for summary judgment, Bailey attempts to create a genuine issue of material fact by drawing our attention to a statement in her own deposition testimony, buried in the voluminous appellate record, and not specifically addressed below. She claims that Ernestine Shelton relayed to her "a little message ... from Gary Frasure (sic), that if I would keep my mouth shut then I would get to keep my job."
 
 
 28
 When a defendant moves for summary judgment on the ground that the plaintiff lacks evidence of an essential element of the plaintiff's claim, as in the present case, Rule 56 requires the plaintiff to present evidence of evidentiary quality that demonstrates the existence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); Winskunas v. Birnbaum, 23 F.3d 1264, 1267 (7th Cir.1994). Examples of such evidence include admissible documents or attested testimony, such as that found in affidavits or depositions. Winskunas, 23 F.3d at 1267 (citations omitted). The proffered evidence need not be in admissible form, but its content must be admissible. Celotex Corp., 477 U.S. at 324, 106 S.Ct. at 2553; Winskunas, 23 F.3d at 1268. For instance, deposition testimony will assist a plaintiff in surviving a motion for summary judgment, even if the deposition itself is not admissible at trial, provided substituted oral testimony would be admissible and create a genuine issue of material fact.
 
 
 29
 Even if we assume that Assistant Superintendent Frazier testifies at trial to his alleged out-of-court statement, Bailey's deposition testimony nevertheless fails to raise a factual issue with respect to the causal link between her First Amendment activities and the actions taken by the named defendants. The alleged threat assists Bailey in proving only that a non-defendant third party may have been motivated to act against her as a result of her speech. Bailey points to no actions or comments by the named defendants that would raise a genuine issue that her protected speech was a substantial or motivating factor in the decision to dismiss her. Indeed, that Superintendent Towler issued the appointment letter, dated July 9, naming Bailey as Head Start Director for the 1993-94 school year so soon after her speech at the May 26, 1993, school board meeting indicates that considerably less animus existed than Bailey's unsupported allegations suggest. See Hartsel, 87 F.3d at 803-04; Buhrmaster v. Overnite Transp. Co., 61 F.3d 461, 464 (6th Cir.1995), cert. denied, --- U.S. ----, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996) (allowing the factfinder to infer a lack of discriminatory intent when the same person both hired and fired the employee). The record further reveals that Superintendent Towler commenced action against Bailey only after reviewing the OEA report, which provided ample evidence of illegal or otherwise improper conduct upon which to recommend Bailey's dismissal to the Policy Committee.
 
 
 30
 We conclude, therefore, that Bailey has failed to present evidence that would allow a reasonable jury to conclude that she was fired for engaging in protected conduct. As she is unable to support an essential element of her First Amendment claim, the district court properly dismissed it.
 
 III. CONCLUSION
 
 31
 Having determined that Bailey is unable to make a prima facie showing that the defendants violated either her due process or First Amendment rights, we do not address the district court's rulings as to Superintendent Towler's qualified immunity defense or the School Board defendants' Eleventh Amendment defense.
 
 
 32
 The district court's dismissal of Bailey's entire case is AFFIRMED.
 
 
 
 [1]
 In her original complaint, Bailey named Patty C. Owens as a defendant in this action. Later, Bailey amended her complaint to include the defendant by her actual name, Hattie C. Owens
 
 
 [2]
 As a second basis for her claim under the First Amendment, Bailey initially contended that her dismissal resulted from her family's support of a political candidate who was purportedly unpopular with members of the school board. Bailey appears to have abandoned that argument on appeal
 
 
 [3]
 The district court did not address whether the FCHSPP manual gave Bailey a contractual right to continued employment, although the court did observe that an employer's failure to follow its personnel manual does not necessarily violate the Fourteenth Amendment. Bates v. Sponberg, 547 F.2d 325 (6th Cir.1976). In ruling on the defendants' motion for summary judgment below, the district court construed Bailey's argument as a claim for the right to continued employment based on the Delegation Agreement. J.A. at 38-39. The Delegation Agreement is clearly a compact between Big Sandy and Floyd County and, notwithstanding Bailey signing the agreement as a witness thereto, does not concern Bailey's employment whatsoever. Consequently, the district court correctly concluded that the Delegation Agreement does not give Bailey a right to continued employment. However, we find, based on the memorandum accompanying Bailey's motion for summary judgment, that the district court misconstrued Bailey's argument. It is clear to us that Bailey seeks to establish that the FCHSPP manual, not the Delegation Agreement, modified her initial at-will contract and, hence, entitled her to a property interest in her job
 
 
 [4]
 As an aside, we note that even if Bailey's one-year contract theory was properly before us, our next inquiry would be whether a federal cause of action is the appropriate remedy for the premature termination of her contract. Collyer v. Darling, 98 F.3d 211, 223 (6th Cir.1996) (citing Sutton v. Cleveland Bd. of Educ., 958 F.2d 1339, 1349 (6th Cir.1992)). According to Judge Boggs's reasoning in Ramsey, albeit dicta, no federal cause of action would lie under section 1983 because a common law breach of contract action would be an adequate remedy for the deprivation of Bailey's finite interest. 844 F.2d at 1274
 
 
 [5]
 If the employee meets this burden, the onus then shifts to the employer to show by a preponderance of the evidence that it would have taken the same action absent the protected speech. Mount Healthy, 429 U.S. at 287, 97 S.Ct. at 576; Langford, 921 F.2d at 682-84; Barnes v. McDowell, 848 F.2d 725, 733 n. 9 (6th Cir.1988). An unqualified or otherwise unsatisfactory government employee is not allowed to immunize himself from dismissal merely by publicly adopting a position adverse to the interests of his employer. See Mount Healthy, 429 U.S. at 286, 97 S.Ct. at 575