**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0135n.06
Filed: February 18, 2005

**No. 03-2582**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **WILLESE EVERSON,** | ) | |
| | ) | |
| *Plaintiff-Appellant*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| **THE BOARD OF EDUCATION** | ) | ON APPEAL FROM THE UNITED |
| **OF THE SCHOOL DISTRICT** | ) | STATES DISTRICT COURT FOR |
| **OF THE CITY OF HIGHLAND PARK,** | ) | THE EASTERN DISTRICT OF |
| **THE HIGHLAND PARK SCHOOL BOARD,** | ) | MICHIGAN |
| **JOHN D. WHITE, JOHN HOLLOWAY,** | ) | |
| **ELEANOR D. BLACKWELL,** | ) | |
| **WINONA G. HUMPHREY,** | ) | |
| **HARRY C. WALKER,** | ) | |
| **JAMILLE L. EDWARDS,** | ) | |
| **DOROTHY E. EADDY, and** | ) | |
| **LEONARD W. ROBINSON,** | ) | |
| **in their individual and official capacities,** | ) | |
| **jointly and severally,** | ) | |
| | ) | |
| *Defendants-Appellees.* | ) | |

Before: **MOORE, Circuit Judge; GILMAN, Circuit Judge**; and **WEBER, Senior District Judge**.[1]

---

[1] The Honorable Herman J. Weber, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

**PER CURIAM:** Plaintiff-Appellant Willese Everson appeals a decision by the District Court for the Eastern District of Michigan granting summary judgment in favor of defendants-appellees on Everson's claims arising out of the termination of her employment as a principal in the Highland Park Public Schools. For the reasons set forth below, the decision of the district court is **AFFIRMED** in part and **REVERSED** in part, and the case is **REMANDED** to the district court for further proceedings.

**I.**

Willese Everson, a Michigan resident, was hired by the Highland Park School Board (the "Board") as the principal of Liberty Academy in the Highland Park, Michigan Public Schools on or about November 27, 2000. The Board voted to terminate her employment on or about April 10, 2001. The termination was effective June 25, 2001. Everson filed suit against the Board, the Board of Education of the School District of the City of Highland Park ("Board of Education"), Superintendent John D. White, and School Board members John Holloway, Eleanor D. Blackwell, Winona G. Humphrey, Harry C. Walker, Jamille L. Edwards, Dorothy E. Eaddy and Leonard W. Robinson, jointly and severally, in their individual and official capacities. Everson brought claims for breach of contract; intentional infliction of emotional distress; violation of the public policy of the State of Michigan; tortious interference with business relationship and/or contract; violation of her rights to freedom of expression and association, due process and equal protection; and violation of parallel Michigan statutes, M.C.L. § 380.1229/M.S.A. § 15.41229.[2]

The district court issued a final judgment denying Everson's Motion for Summary Judgment

---

[2] We will cite only to M.C.L. § 380.1229 hereinafter when referring to the statutes.

as to Count VI Only (violation of M.C.L. § 380.1229) and granting defendants-appellees' Motion

for Summary Judgment in its entirety. Everson appeals only the district court's dismissal of her

claims for breach of contract/violation of M.C.L. § 380.1229 and her claims for violation of her

First Amendment rights to freedom of expression and association.

## II.

Plaintiff was hired by the Board on November 27, 2000, for a two-year term at the

recommendation of then Highland Park Schools Superintendent, Dr. Beulah Mitchell. The position

was a non-tenured position with the first year of the appointment constituting a probationary period.

Everson did not sign a contract at the time of her hiring.[3] Rather, she was first presented with a

written contract immediately prior to her termination. Maintenance Supervisor John Powell

presented the contract to Everson. Both Everson and Powell signed the contract, although Everson

claims that she signed the contract without carefully reading it and under duress. Superintendent

White also signed the contract at some point. The contract states that it is for a two-year period

beginning July 1, 2000, and that the first twelve months shall be deemed a probationary period. The

express terms of the contract provide that, during the probationary period, the "Administrator may

be, without notice, reassigned, terminated, [d]ischarged, or demoted without just cause . . . ."

Early in 2001, controversy arose regarding the impending termination of Dr. Mitchell's

employment. The Board maintained that Dr. Mitchell had not complied with a local residency

requirement, although there was speculation that the Board was actually retaliating against Dr.

Mitchell for reform efforts that she had undertaken and which had been reported by the *Detroit*

---

[3] Defendants-appellees allege that Everson was hired pursuant to the collective bargaining agreement that is included in the record. It is not clear from the record, however, whether the collective bargaining agreement was in effect during the period of Everson's employment and whether Everson was covered by the agreement.

3

*News*. Specifically, it was reported that Dr. Mitchell had cut Board members' travel allowances; cancelled their memberships in the "Skyline Club"; ended the Board's bi-monthly, pre-meeting catered dinners; and hired an accounting firm to recommend other ways to save money. The Board placed Dr. Mitchell on administrative leave at the March 13, 2001 Board meeting and named Assistant Superintendent John White as the Interim Superintendent. Dr. Mitchell was terminated the following month.

Everson had spoken out on Dr. Mitchell's behalf at the March Board meeting. In her deposition testimony, Everson summarized the comments that she had made at the meeting. Everson testified that she had expressed her personal feelings that Dr. Mitchell was an excellent administrator and that Everson "was respectful" that the Board would consider its decision in light of the fact that the termination would hurt both Everson as an administrator and the students at Liberty Academy. The following month, just prior to the Board's April 10, 2001 meeting, White verbally advised Everson that her probationary employment would not be renewed. White then made a motion at the April meeting to terminate Everson's employment. The Board approved the motion.

Everson subsequently filed this lawsuit, claiming that she was fired because of her comments at the March 2001 Board meeting, her "outspoken support" of Dr. Mitchell, and her criticism of the Board. Everson claimed that, in addition to violating her First Amendment rights, her termination violated certain provisions of M.C.L. § 380.1229, which sets forth the rights that must be accorded

4

non-tenured school administrators in connection with the non-renewal of an employment contract.[4]

Everson claimed that, because she had not received written notice of non-renewal of the contract at least sixty days before the contract's termination date, she was entitled to renewal of the contract for an additional one-year period under the terms of the statute. Everson further claimed that, by terminating her employment, defendants-appellees breached an unwritten employment agreement that she had with the Board, pursuant to which she purportedly could be terminated only for just cause.

**III**.

We review the district court's grant of summary judgment in favor of defendants-appellees on all claims *de novo.* ***Thomas v. United States,*** 213 F.3d 927, 929 (6th Cir. 2000). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

---

[4] The statute provides, in pertinent part, as follows:

(2) The board of a school district . . . may employ . . . principals . . . and other administrators who do not assume tenure in that position . . . . The employment shall be by written contract. The term of the employment contract shall be fixed by the board, not to exceed 3 years. The board shall prescribe the duties of a person described in this subsection. If written notice of nonrenewal of the contract of a person described in this subsection is not given at least 60 days before the termination date of the contract, the contract is renewed for an additional 1-year period.

(3) A notification of nonrenewal of contract of a person described in subsection (2) may be given only for a reason that is not arbitrary or capricious. The board shall not issue a notice of nonrenewal under this section unless the affected person has been provided with not less than 30 days' advance notice that the board is considering the nonrenewal together with a written statement of the reasons the board is considering the nonrenewal. After the issuance of the written statement, but before the nonrenewal statement is issued, the affected person shall be given the opportunity to meet with not less than a majority of the board to discuss the reasons stated in the written statement . . . . If the board fails to provide for a meeting with the board, or if a court finds that the reason for nonrenewal is arbitrary or capricious, the affected person's contract is renewed for an additional 1-year period.

material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party. *National Enterprises, Inc. v. Smith*, 114 F.3d 561, 563 (6th Cir. 1997). To prevail, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986)). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512 (1986)).

## A.     Claims for breach of contract/violation of M.C.L. § 380.1229

Everson relies on *Toussaint v. Blue Cross and Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980), in support of her claim that she had a "just cause" employment agreement with the Board. *Touissaint* holds that a provision that an employee shall not be discharged except for cause may become part of an employment contract "either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements." *Id.* at 598, 292 N.W.2d at 885. Everson contends that she derived a legitimate expectation of continued employment absent just cause for termination from provisions of M.C.L. § 380.1229 that (1) permit termination of a non-tenured employee only for a reason that is not arbitrary and capricious, and (2) require that written notice be given in advance of the termination. Everson argues that defendants-appellees violated the "just cause" employment agreement and M.C.L. § 380.1229 by declining to renew the agreement for a reason that was arbitrary and capricious; by failing to give her 30 days' advance notice that the Board was considering non-renewal of the

6

employment agreement; by failing to provide her with a written statement of the reasons for non-renewal of the employment agreement; and by failing to provide her with the opportunity to meet with a majority of the Board of Education to discuss the reasons for non-renewal of the employment agreement.

Everson argues that the written contract that she signed shortly before her termination does not refute the legitimacy of her expectation that she could be terminated only for just cause. Rather, Everson claims that the written contract is invalid and should be declared void on several grounds. First, Everson alleges that she signed the contract without reading it and under duress. Second, Everson contends that John Powell did not have authority to enter into the contract on behalf of the School District. Third, Everson asserts that there was no consideration for the signing of the contract since she was already employed when she signed it. Finally, Everson claims that the contract violates M.C.L. § 380.1229.

In response, defendants-appellees argue that Everson did not have a legitimate expectation that her employment could be terminated only for just cause. They assert that Everson was hired on a probationary basis pursuant to both the collective bargaining agreement covering administrators and the standard contract that is part of the collective bargaining agreement, which provides that new administrators hired on a probationary basis may be terminated without notice and without just cause. Defendants-appellees also contend that Everson was advised when she was hired that her employment was probationary, and, prior to the termination of her employment, she signed the written contract providing that she could be terminated without just cause. Defendants-appellees argue that Everson has failed to establish that the contract is invalid. They allege that Everson's claim of duress is unsupported; she cannot avoid the contract by asserting that she did not read it

7

before signing it; and M.C.L. § 380.1229 does not apply to her because she was covered by a collective bargaining agreement and because the statute, by its plain language, does not apply to employees who are fired as opposed to employees whose contracts are not renewed. Defendants-appellees further argue that, even if the statute were held to apply to Everson, they did not violate its provisions since Everson admittedly received notice of her termination prior to the April Board meeting, and the termination was for just cause.

The district court determined that the written contract Everson signed was not invalid. The district court specifically found that M.C.L. § 380.1229 is silent with regard to probationary employees and therefore does not prohibit a probationary period as expressly provided for, and imposed by, Everson's contract. Everson challenges the district court's finding, noting that the statute, by its express terms, does not limit its application to non-probationary employees.

M.C.L. § 380.1229 does not specifically reference the rights of probationary employees. Rather, the statute speaks in terms of "administrators who do not assume tenure." Everson acknowledged at oral argument that there is no Michigan case law holding that the statute applies to probationary contracts and no Michigan legal authority that bars the hiring of a school administrator for a probationary term during which the administrator may be terminated without just cause. Absent such authority, there is no basis for holding that MCL § 380.1229 imposed any requirements on the Board with regard to the hiring of Everson and the termination of her employment. Everson therefore could not have derived from M.C.L. § 380.1229 a legitimate expectation that, as a probationary employee, she could be terminated only for just cause and only upon receiving the procedural protections afforded under the statute.

There is no other source from which Everson could have derived a legitimate expectation

8

that she could be terminated only for just cause. As correctly noted by the district court, Everson has not pointed to a clear and specific policy statement that could reasonably be interpreted as a promise to that effect. Moreover, the contract that Everson signed expressly states that she could be terminated without just cause and without notice during the probationary period. Everson cannot establish that the written contract is void on the ground that it violates M.C.L. § 380.1229 since the contract, by its terms, is for a probationary period of employment. Everson has also failed to produce evidence to show that the contract is invalid on grounds of duress, and the fact that she may have signed the contract without reading it is not a legitimate basis for invalidating the contract. *See Stopczynski v. Ford Motor Co.,* 200 Mich. App. 190, 193, 503 N.W.2d 912 (1993). As to her claim that the contract is void for lack of consideration, the only authority Everson cites in support of such claim is a case decided under Texas law in which the court stated that at-will employment does not preclude the formation of other contracts between an employer and employee, so long as neither party relied on continued employment as consideration for the contract. *See J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 47 Tex. Sup. Ct. J. 196 (2003). Everson cites no Michigan case law or other authority to support the argument that the contract she signed is invalid under Michigan law for lack of consideration.

Because Everson has failed to demonstrate that she had a legitimate expectation of continued employment absent just cause for termination, defendants-appellees were free to terminate Everson's employment without cause pursuant to the terms of the written contract. Everson was not entitled to the procedural protections afforded under M.C.L. § 380.1229 in connection with her termination. Accordingly, we affirm the district court's determination that Everson's claims for breach of contract and for violation of M.C.L. § 380.1229 fail as a matter of law.

9

**B.      The First Amendment claims**

The district court determined that defendants-appellees are entitled to qualified immunity on Everson's claims for violations of her constitutional rights to freedom of expression and association.[5] Government officials performing discretionary functions are generally immune from liability for civil damages so long as their actions do not violate clearly established statutory or constitutional rights of which a reasonable person would have known. ***Harlow v. Fitzgerald,*** 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982).  Whether a defendant is entitled to qualified immunity is a question to be resolved at the earliest possible stage of the litigation. ***Saucier v. Katz,*** 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001).  Resolving the issue requires a two-part analysis: (1) "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?"; and (2) "if a violation could be made out on a favorable view of the parties' submissions," was the right clearly established? ***Id.***

Whether a party is entitled to qualified immunity is typically a question of law for the court to decide. ***Brandenburg v. Cureton,*** 882 F.2d 211, 215 (6th Cir. 1989).  When the facts on which the question of immunity turns are in dispute, however, it is for the trier of fact to make the factual findings underlying resolution of the qualified immunity issue. ***Gardenhire v. Schubert,*** 205 F.3d 303, 311 (6th Cir. 2000).

As noted by the district court, the parties do not dispute whether the constitutional rights asserted by Everson are firmly established.  The question is whether Everson has presented sufficient

---

[5] The district court apparently determined that all of the defendants-appellees are entitled to qualified immunity on Everson's § 1983 claims.  The defense, however, is not available to individuals who have been sued in their official capacities, so that the individual defendants-appellees are entitled to raise the qualified immunity defense only insofar as they are sued in their individual capacities. ***See United Food & Commercial Workers Local 1099 v. City of Sidney,*** 364 F.3d 738, 753 n. 4 (6th Cir. 2004) (citing ***Alkire v. Irving,*** 330 F.3d 802, 810-11 (6th Cir. 2003)).  The defense is likewise unavailable to government entities such as the Board and the Board of Education.

10

evidence to demonstrate that reasonable officials in the defendants-appellees' positions should have known that their conduct violated those clearly-established rights.

Plaintiff brings her constitutional claims under 42 U.S.C. § 1983. A plaintiff may establish a claim under 42 U.S.C. § 1983 by showing that (1) a person acting under color of state law (2) deprived the plaintiff of rights secured by the United States Constitution or laws of the United States. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604 (1970). Local government units may also be sued under § 1983. *Monell v. Dept. of Soc. Servs. of the City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978).

A public employee who seeks to establish a First Amendment violation based on her discharge from employment must demonstrate that (1) her speech was constitutionally protected, and (2) such speech was a substantial or motivating factor in her discharge. *Jackson v. Leighton,* 168 F.3d 903, 909 (6th Cir. 1999) (citing *Bd. of County Com'rs, Wabaunsee County, Kan. v. Umbehr,* 518 U.S. 668, 675, 116 S.Ct. 2342 (1996)). If the employee makes this showing, the government can avoid liability "by showing that it would have taken the same action even in the absence of the protected conduct." *Id.*

In determining whether speech is constitutionally protected, the court undertakes a two-part inquiry: First, the court must determine whether the plaintiff's speech touched on a matter of public concern. Second, if the court determines that the speech involved a matter of public concern, the court must apply the balancing test set forth in *Pickering v. Board of Education of Township High School District 205,* 391 U.S. 563, 568, 88 S.Ct. 1731 (1968). *Farmer v. Cleveland Public Power,* 295 F.3d 593, 599-600 (6th Cir. 2002).

Whether speech addresses a matter of public concern is a question of law. *Id.* at 600. A

11

matter of public concern generally involves a "matter of political, social, or other concern to the community." *Leighton,* 168 F.3d at 909 (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684 (1983)). A determination of whether speech involves a matter of public concern must be based on the "content, form, and context of a given statement, as revealed by the whole record." *Connick,* 461 U.S. at 147-48, 103 S.Ct. at 1690. The motive underlying an employee's statement is a relevant, but not necessarily dispositive, factor in considering whether the statement may be fairly characterized as relating to a matter of political, social, or other concern to the community. *Chappel v. Montgomery County Fire Prot. Dist. No. 1,* 131 F.3d 564, 576 (6th Cir. 1997) (citing *Cliff v. Bd. of Sch. Com'rs of Indianapolis, Ind.,* 42 F.3d 403, 409 (7th Cir. 1994)). Speech may be protected even though only a part of it touches on a matter of public concern. *Banks v. Wolfe County Bd. of Educ.,* 330 F.3d 888, 892 (6th Cir. 2003).

The *Pickering* balancing test requires the court to "arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734-35. "In striking the balance, courts should consider whether an employee's comments meaningfully interfere with the performance of her duties, undermine a legitimate goal or mission of the employer, create disharmony among co-workers, impair discipline by superiors, or destroy the relationship of loyalty and trust required of confidential employees." *Williams v. Com. of Ky.,* 24 F.3d 1526, 1536 (6th Cir. 1994).

In order to establish that protected speech was a substantial or motivating factor in the employee's discharge, the employee must point to "'specific, nonconclusory allegations' reasonably linking her speech to employer discipline." *Bailey v. Floyd County Bd. of Educ. By and Through*

12

*Towler,* 106 F.3d 135, 144 (6th Cir. 1997). The plaintiff "may not rely on the mere fact that an adverse employment action followed speech that the employer would have liked to prevent." *Id.* at 145. The question of causation is typically left to the jury, unless the employee has failed to present a genuine issue of fact as to whether her speech caused her discharge. *Id.* (citations omitted).

Turning first to Everson's free speech claim, the district court determined that Everson had satisfied her burden to show that she engaged in constitutionally protected speech and that she was subjected to an adverse action. The district court found, however, that Everson had not come forward with sufficient evidence to show that her protected speech was a substantial or motivating factor in the adverse employment decision. The court stated that the only evidence Everson had offered to show that she was fired because of comments that she had made to the Board was the timing of her termination. The court also noted that, although Everson suggests that she was discharged because she was a vocal supporter of Dr. Mitchell and a critic of the School Board, Everson failed to provide any evidence of her alleged activism and did not demonstrate that any member of the Board was even aware of her activities. The court rejected as completely speculative the deposition testimony of Board member Leonard Robinson, who voted against Everson's discharge, as to what prompted other Board members to vote in favor of Everson's termination.

Defendants-appellees argue that, as a matter of law, they "could have reasonably concluded that termination of Plaintiff did not violate any of her constitutional rights," and that they are therefore entitled to qualified immunity on Everson's § 1983 claims. They assert that Everson's speech was on a matter of personal interest, i.e., her personal feelings regarding Dr. Mitchell's job performance, and did not touch on a matter of public concern. Defendants-appellees claim that Everson admits that she was speaking on her own behalf out of a fear that she would be hurt by Dr.

13

Mitchell's termination. They further argue that, even if Everson's speech were on a matter of public concern, the School District's interest in "efficiency between the superintendent and the school board outweighs Plaintiff's interests in commenting on an employment decision by the school board." They claim that "Plaintiff's right to speak out in support of a previously terminated superintendent does not outweigh the school's interest in selecting superintendents that will follow the school's policies and work harmoniously with the school board towards furthering the education aims of the school district."

As the district court correctly determined, not all of the speech on which Everson relies in support of her First Amendment claim can serve as the basis for that claim. Although Everson states that she spoke in support of Mitchell's reform efforts at public forums other than the March 2001 Board meeting, she has provided no specifics to support her claim or to show that defendants-appellees were aware of her speech. Everson also claims to have collected signatures on a petition seeking review by the State of the School District's finances, but there is no evidence that any defendant-appellee was aware of this activity. Absent evidence that defendants-appellees knew of these incidents, Everson cannot properly rely on them to support her free speech claim.

Conversely, the district court found, and we agree, that Everson's comments at the March 2001 Board meeting constitute "protected speech" that can support her First Amendment claim. At the meeting, Everson stated in opposition to Dr. Mitchell's impending termination that it was her belief that Dr. Mitchell's firing would be detrimental to Liberty Academy and to Everson as an administrator. As the district court recognized, the local community has an interest in actions contemplated by elected officials, such as the Board members, that could negatively impact upon the welfare of a local public school. Everson's comments made in opposition to Dr. Mitchell's

14

termination touched on that concern.

As the district court also correctly determined, defendants-appellees failed to demonstrate that their stated interest in "efficiency between the superintendent and the school board" outweighs Everson's interest in commenting upon a significant employment decision that was before the Board. Defendants-appellees have not indicated how Everson's comments may have negatively impacted their interest in an efficient working relationship between the Superintendent and the Board, or any other legitimate interest they may have had. They do not allege that Everson's comments interfered with the performance of her duties, undermined a legitimate goal of the Board, created disharmony among Everson and her co-workers, impaired discipline by the Board, or destroyed a relationship of loyalty and trust required of a confidential employee.

The issue then becomes whether the district court erred in finding that Everson had failed to come forward with sufficient evidence to show that her speech to the Board was a substantial or motivating factor in defendants-appellees' decision to terminate her employment. Defendants-appellees deny that Everson's comments and actions were factors in the decision to terminate her contract, and they have articulated legitimate reasons for the decision. They allege that they terminated Everson because they learned that she was not qualified for the principal position; the Board members were advised by Superintendent White that Everson was doing a poor job; and several citizens had related complaints regarding Everson's job performance. More specifically, defendant White testified at his deposition that he made the recommendation to terminate Everson based upon observations that he had made while Assistant Superintendent. White testified that he had observed poor performance and ineffective management skills on Everson's part, specifically problems working with staff and handling parental complaints. White asserted that Everson lacked

15

the necessary qualifications for the principal's position and that complaints had been lodged against her by parents.

Everson disputes the reasons offered by defendants-appellees for her termination. Everson contends that at no time prior to her termination had she ever been disciplined for allegedly poor performance. She asserts that she had likewise never been informed that there were complaints by parents concerning her performance. Everson notes that Board member Robinson testified at his deposition that, as a Board member, he had never been informed of any performance issues concerning Everson, he was not aware of any parental complaints about her job performance, and he believed that Everson's termination was in retaliation for her speech in support of former Superintendent Mitchell. Everson further asserts that defendants-appellees did not set forth her credentials as a basis for her termination in their responses to interrogatories, but at least one Board member testified that this was the reason for Everson's termination. Finally, Everson alleges that the Board was aware of her credentials at the time she was hired, but the Board did not question those credentials, and it unanimously approved her hiring.

We find that the evidence Everson has produced is sufficient to create a genuine issue of fact as to whether she was terminated for the reasons proffered by defendants-appellees, or whether she was terminated in retaliation for speaking out in favor of Dr. Mitchell at the March 2001 Board meeting. First, the record is unclear as to whether Everson lacked the necessary credentials, whether she made false representations to defendants-appellees in this regard, and whether either the absence of the proper credentials or Everson's alleged false representations as to her credentials motivated the termination decision. Although defendants-appellees represented to the court at oral argument that it is illegal under Michigan law to employ a principal who lacks the proper certification,

16

defendants-appellees have failed to cite any statutory provision to support this proposition. In fact, the record contains some indication that a K-8 certification was not a *required* qualification for Everson's job. In their appellate brief, defendants-appellees describe the qualifications listed in the job posting for the principal position as qualifications that the successful candidate "should" possess, thereby suggesting that these qualifications were preferred, but not mandatory.[6] The job posting likewise suggests that the qualifications listed therein are not mandatory by including as the last qualification the catch-all category of "Such alternatives to the above qualifications as the Board of Education may find appropriate and acceptable." Thus, the issue of whether Everson was required to hold a K-8 certification for the principal's position, which is a material issue that bears on the question of motive, requires further development of the record and cannot properly be resolved on summary judgment.

Similarly, the record does not clearly show that Everson falsified her credentials and failed to disclose that she lacked a K-8 certification at the time of her hiring. To establish this allegation, defendants-appellees rely on minutes from the November 2000 Board meeting at which the issuance of a probationary contract to Everson was approved. The minutes reflect that a Board member asked about a K-8 certification and that "Dr. Mitchell addressed this concern, noting that other documentation would be forthcoming." This exchange falls short of establishing that Everson falsely informed the Board that she actually had this certification when, in fact, she did not.

Instead, defendants-appellees' representations regarding Everson's alleged lack of

---

[6] These qualification included the following: "A valid Michigan Teaching Certificate covering K-8 inclusive. Possession of or eligibility for State of Michigan Administrative Certification"; "Present evidence of systematic study of Academy organization, administration, and curriculum, and the growth and development of the Academy age child"; and "Three (3) years of public school administration and/or equivalent administrative experience in an urban setting preferred."

17

credentials call into question the veracity of their stated reasons for the termination. Although there was obviously some question concerning Everson's qualifications at the time she was hired, the Board did not perceive the issue to be so critical as to preclude Everson's hiring or to require a prompt resolution. The Board instead waited until after Everson had spoken at the March 2001 Board meeting to act. Considering that the information on which the Board purportedly relied had apparently been available to the Board for some months prior to the April meeting, the timing of the Board's action raises questions as to defendants-appellees' motives that cannot be resolved on summary judgment.

Defendants-appellees' purported reliance on parental complaints as a basis for Everson's termination is also suspect. Defendants-appellees allege that they had received complaints by parents prior to the April 2001 Board meeting, but they did not document any such complaints. Rather, the only documented complaints are four rather general complaints that were presented at the meeting at which the Board voted to terminate Everson's employment.[7] Because these particular complaints were not presented until after White had made the decision to terminate Everson and after the termination had been placed on the agenda for the meeting, there is a serious issue as to whether defendants-appellees actually relied on parental complaints when making the termination decision.

In addition, no Board member discussed, or could recall discussing, with the Superintendent prior to the April Board meeting the Superintendent's recommendation that Everson be terminated.

---

[7] Those complaints are recorded in the Board minutes as follows: (1) A resident "expressed concerns regarding her son and the disciplinary actions toward him by [Everson]"; (2) A resident "expressed concerns regarding the alleged accusations against her by [Everson] and her handling of a problem situation involving her daughter"; (3) A resident "expressed concerns regarding [Everson] and her son being out of school for a month on suspension"; and (4) A resident "expressed concerns regarding the dismissal of their parent advocate by [Everson]."

18

Nor do the Board minutes reflect that any discussion of the recommendation occurred at the meeting. At best, it appears that the Board members blindly adopted the Superintendent's recommendation based on the vague reasons he offered without engaging in any discussion whatsoever regarding the matter. The perfunctory manner in which the defendants-appellees acted could lead a reasonable trier of fact to question the veracity of the reasons offered by defendants-appellees for Everson's termination.

Defendants-appellees' failure to produce written documentation to support their claim of poor job performance by Everson also raises questions regarding their motives. There is no indication in Everson's personnel file or elsewhere that Everson was ever disciplined for poor job performance. The record reflects that Everson and White had some discussions concerning her job performance, but it is unclear whether Everson was ever counseled in this regard. White testified only that he spoke to Everson on occasion about her management style, but he did not compile any written reports. Everson received no written statement as to why she was being terminated. Moreover, Superintendent White did not provide any supporting documentation regarding his recommendation of termination to the Board members.

Finally, Superintendent White's nebulous deposition testimony as to his reasons for recommending Everson's termination calls into question the veracity of the stated reasons. White testified that, as Assistant Superintendent, he had observed issues that troubled him on his visits to Everson's school. He summarized these issues as "[m]anagement skills, her inability to be an effective manager. The building was somewhat chaotic in terms of discipline. There was a problem that she had with discipline in terms of disciplining students." He described the discipline issue as follows: "It had to do with the appropriate type of discipline. What could be done in lieu of let's say

19

suspension, how could you build a parental support base, things of that nature." *Id.* White, however, described no specific incidents of inappropriate discipline or ineffective management by Everson; he did not document the issues he noted; and he did not suggest that had he worked with Everson to any appreciable extent in order to resolve the issues he identified. Moreover, although White testified at his deposition that his visits to Liberty Academy had been made at the direction of Dr. Mitchell and that he had orally reported back to Dr. Mitchell, Dr. Mitchell's affidavit suggests that she was not made aware of any deficiencies in Everson's job performance. Dr. Mitchell stated in her affidavit that, during Dr. Mitchell's tenure, Everson's job performance was "excellent." The affidavit raises a factual issue as to whether Everson's job performance was deficient and whether the deficiencies that White articulated as a reason for the termination actually motivated the termination decision.

Considered together, the suspect sequence of events, the fact that the decision to terminate Everson followed quickly on the heels of her remarks at the preceding month's Board meeting, the sketchy deposition testimony offered by defendants-appellees, and the lack of documentation of Everson's allegedly poor job performance and parental complaints, are sufficient to raise a genuine issue of material fact as to whether Everson's protected speech was a substantial or motivating factor in the termination decision. This evidence is likewise sufficient to raise a genuine issue of material fact as to whether defendants-appellees would have taken the same action in the absence of the protected conduct. The district court erred in determining otherwise.

Defendants-appellees argue that even if Everson were terminated for her speech in support of Dr. Mitchell, she is not entitled to First Amendment protection under the *Elrod/Branti* exception. The *Elrod/Branti* exception holds that public employees in policymaking or confidential positions

20

may be terminated solely for their political affiliations without violating the First Amendment. *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673 (1976); *Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287 (1980). This court has determined that the *Elrod/Branti* exception may apply to a situation where a policymaking or confidential employee is discharged on the basis of actual speech rather than political affiliation. *Rose v. Stephens,* 291 F.3d 917, 921 (6th Cir. 2002). The court in *Rose* adopted the rule that "where a confidential or policymaking public employee is discharged on the basis of speech related to his political or policy views, the *Pickering* balance favors the government as a matter of law." *Id.*

The district court found that because Everson had failed to present any evidence that she was discharged either because of her speech or her purported political affiliation, it need not resolve whether the *Elrod/Branti* exception applies. We agree with the district court that there is no need to determine the applicability of the exception with respect to Everson's freedom of association claim. Everson has not produced any evidence to show that she was discharged because of her political affiliation, and her freedom of association claim must therefore fail. Because we have determined, however, that plaintiff has presented sufficient evidence to establish a violation of her free speech rights, the applicability of the exception in the context of the free speech claim is an issue that the district court should consider on remand.

## IV. Conclusion

For all of the reasons set forth above, we **AFFIRM** the decision of the district court dismissing Everson's claims under Michigan law and her First Amendment claim for violation of her right to freedom of association. We **REVERSE** the district court's decision that defendants-appellees are entitled to qualified immunity on Everson's First Amendment free speech claim and to summary judgment in their favor on that claim. The case is **REMANDED** to the district court for further proceedings on the First Amendment free speech claim.