## W. W. Mac Co. v. Teague et al.

May 9, 1944

Stephens & Steely for appellant.

C. B. Upton and R. L. Pope for appellees.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

The appellee, Abbie Teague, instituted this action to recover for overtime while employed by the appellant, W. W. Mac Company, under the Women and Minors' Employment Act. Chapter 105, Acts of 1938 (more specifically KRS 337.360). The jury allowed her for the overtime claimed from June 1, 1939, to the end of the second week of April, 1941. Her attorneys were allowed a fee of $250.

In urging reversal the appellant contends the appellee was the manager of its chain store in Williamsburg, and therefore not entitled to overtime; the provision of the act allowing attorneys' fees violates sections 3 and 59 of the Constitution; and, in the event the provision be held constitutional, the fee allowed was too large.

The Company purchased its store in Williamsburg in 1938. The appellee had been employed therein about three years prior to that date. She left the Company's employ about the middle of April, 1941. The store was a small one and the appellee and Anna Taylor, the bookkeeper, were the only females regularly employed during the period in question. The home office of the Company is in New York. The manager for the district in which the Williamsburg store is located lives in Bristol, Virginia. It was his custom to visit the store every six or eight weeks. During most of the time prior to July 1, 1940, the Company employed a male manager for the store. The Company showed by testimony of its officers and by copies of its records that it was its custom to pay its managers by check from the New York office. Other employees were paid from the cash receipts. The bookkeeper kept a record of the hours worked by the sales force and of the amounts disbursed. These records showed the appellee worked no overtime and that she was employed and paid in accordance with the provisions of the Women and Minors' Employment Act. The district manager testified that at no time did he instruct the appellee and the bookkeeper to work overtime or to falsify their employment records, as they testified. In addition, the appellee testified it was impossible to do the work laid out by the district manager except by working overtime. The appellee's wages ranged from $8 to $10 up to the first of July, 1940. At that time the male manager was discharged and, according to the testimony of the district manager,

the appellee was placed in charge of the store. This she denied. However, beginning on that date she was paid $12.50 weekly by check from the New York Office. The bookkeeper was paid a like amount.

About a year after the appellee left the Company's employ she filed a complaint with the Commissioner of Industrial Relations. The schedule which she filed with that official set up a claim to some 1200 hours overtime, though she said she had no salary receipt or record of the hours worked, and that she was employed as saleslady and in charge of the store. The Commissioner made an investigation of the complaint and finally advised the appellee that no evidence was found substantiating her claim, and that "in view of the fact you were acting manager of this store with authority to set hours of work, hire and release employees, I do not think it proper for us to take action on a complaint filed by you against this company. I am therefore directing that your claim be filed away." About a year later this action was filed, wherein the appellee claimed she had worked approximately 2000 hours overtime. At the trial she had a typed schedule showing the number of hours she worked each week, the amount she was entitled to receive, the amount paid her and the amount due. She said this information was obtained from a diary and two memoranda books kept by her, but she was unable to produce any of the original records. She was unable to explain the difference in the claim made in this action and the one filed with the Commissioner of Industrial Relations. The dubiousness of the testimony given by the appellee on the trial is at once apparent, but as we have pointed out frequently, the credibility of witnesses is for the jury to determine.

We are definitely of the opinion that no recovery was warranted after July 1, 1940, because the appellee's evidence to the effect that she was not manager or in charge of the store after that date amounts to no more than a scintilla. For the Company there was the positive testimony of the officials as to the manner in which it paid its managers, that the appellee was placed in charge of the store; and furthermore, the appellee stated herself in her claim filed with the Commissioner of Industrial Relations that she was employed as saleslady and in charge of store. Stress is placed upon the small salary of $12.50 a week to show that her salary was

merely that of a saleslady and not a manager, but the Company showed that the Williamsburg store was one of the smallest owned by it, and that its wage scale for managers ranged from $12.50 per week to $25 or more, dependent upon the volume of business done. We have noted also that, during most of the time prior to July, 1940, there was a male manager at the store, and thereafter there was none. One might be justified in saying that the Company was paying its employees at the Williamsburg store starvation wages, but that question does not address itself to us.

KRS 337.360 provides in part:

"If any woman or minor worker is paid by his employer less than the minimum fair wage to which he is enitled under a mandatory minimum fair-wage order he may recover in a civil action the full amount of the minimum wage less any amount actually paid to him by the employer together with costs and such reasonable attorney's fees as are allowed by the court. * * * "

The effect of this provision is that in case an employer violates the Women and Minors' Employment Act by paying less than the wages prescribed by the Commissioner of Industrial Relations, the full amount of the minimum wage may be recovered, together with the costs of the action and a reasonable attorney's fee. This statute is somewhat analogous to the provisions of the Bingham Cooperative Marketing Act which provided that, if a warehouse was held liable for a penalty for the violation of the act, it should be liable also for the plaintiff's attorney's fee. Liberty Warehouse Company v. Burley Tobacco Growers' Co-Op. Ass'n, 208 Ky. 643, 271 S. W. 695. As we construe the statute in question, an employer would not be liable for costs and an attorney's fee in the event the female or minor employee was unsuccessful in the claim for a minimum wage or overtime.

The Annotation following the case of Spicer v. Benefit Association of Railway Employees, 142 Or. 574, 588, 17 P. (2d) 1107, 21 P. (2d) 187, 90 A. L. R. 517, shows that statutory provisions for attorneys' fees in certain instances have been upheld in a number of jurisdictions. In the Spicer case a statute which subjected insurers to the payment of attorneys' fees to a successful plaintiff in an action on an insurance policy

was upheld. The Oregon Constitution contains a provision which prohibits class legislation. Section 3 of our Constitution does likewise, and subsection 29 of section 59 directs that no special law shall be enacted where a general law can be made applicable. We do not believe the statute under attack violates either of these sections of our Constitution. The general assembly, as have those of many other states, has seen fit to make a special class of women and minor employees and to enact legislation in their behalf. The provisions of the statute apply to all workers so classified. That the general assembly was justified in prescribing special working conditions and protective provisions for this class of workers seems beyond question. We believe, therefore, for the reasons given, that the attack upon the constitutionality of the provisions of the act allowing an attorney's fee in the case is without foundation.

We have noted the Company insists that, in the event the section of the statute under attack be upheld, the fee allowed the attorneys for the appellee was too large. They insist also it was error to include the expenses of an anticipated appeal in the fee allowed. The case was appealed, so it seems unnecessary to devote any time to the second point. We are in sympathy, however, with the contention of the Company that the fee allowed was too large. The case was not a complicated one and the recovery amounted to less than $600, approximately one-half of which, as noted heretofore, was unwarranted. It strikes us, therefore, that the fee should not have been in excess of $150.

Wherefore, the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.