**KENTUCKY WATER SERVICE CO. v. CITY OF MIDDLESBORO, Inc.**

Court of Appeals of Kentucky.

March 7, 1952.

Cornelius W. Grafton and Wyatt, Grafton & Grafton, all of Louisville, for appellant.

A. E. Funk, Jr., Middlesboro, for appellee.

CULLEN, Commissioner.

The Kentucky Water Service Company appeals from a judgment declaring that, under the provisions of the charter granted to a predecessor company by the General Assembly, the City of Middlesboro has the right to purchase the property of the company devoted to furnishing water in the city, at a price to be determined according to a method of calculation set forth in the judgment.

In 1890, when the City of Middlesboro (then known as Middlesborough) was in its infancy, the General Assembly granted a charter to the Middlesborough Water Company, giving the company a perpetual franchise for the construction and operation of facilities to render water service to the city and its inhabitants. The charter contained the following provision: *"Section Eleven.* The City of Middlesborough may at any time after ten years purchase the said corporation, its franchises and all its personal and real property, by paying therefor such a sum as together with all its receipts, will reimburse the whole amount expended, with an annual interest of ten percent, and from and after the execution of the conveyance, the city of Middlesborough shall have the right, and be subject to all the duties in this act expressed as to said corporation."

The Middlesborough Water Company proceeded to install a water distribution system in the city, and impounded the waters of a stream to form a lake, constituting the source of water supply to the system. Its efforts proved to be too ambitious, and in 1894 the company went bankrupt. At the sale in bankruptcy, the properties and franchise of the company were purchased, subject to all of the provisions of the original charter, by a new corporation known as the Middlesborough Water Works, which was incorporated under the general corporation laws. The new corporation operated the water system until 1917 or 1918, when the system, including the lake, was purchased by Kentucky Utilities Company. The latter company operated the system until 1947, when the system, excluding the lake, was sold to the appellant, Kentucky Water Service Company. Since that time the appellant company has operated the system, purchasing its water supply from Kentucky Utilities Company.

It is stipulated that the appellant company knew of the provisions of the original charter when it bought the system.

In 1939 or 1940, when the system was owned by Kentucky Utilities Company, and again in 1948, when the system was owned by the appellant company, the city entered into negotiations for the purchase of the system on the basis of a voluntary sale by the owners, disregarding the option provision in the charter, but on both occasions the city abandoned the purchase after a price had been agreed upon.

In July 1950 the city notified the appellant company that the city intended to exercise the purchase option contained in the 1890 charter. The company refused to recognize the right of the city to exercise the option, and the city then instituted the present action for a declaration of rights. A declaration was sought as to whether the city had the right to exercise the option, and if so, "the price or method of calculation of the price" the city would be required to pay.

The circuit court adjudged that the city had the right to exercise the option, "by paying the amount the defendant paid for said property when it purchased the same from the Kentucky Utilities Company on December 22, 1947, plus the cost of any additions the defendant has made thereto, plus 10% interest per annum on said investments less the percentage of net profits per annum, after taxes, the defendant has received from said investments." The judgment contained this further provision: "The Court is advised that the defendant purchased several water companies, including the Middlesboro distributing system, from the Kentucky Utilities Company on December 22, 1947, and that no specific price was paid for the Middlesboro system; it is therefore ordered that the sale price to be considered in the above computation shall be the proportionate value the Middlesboro distributing system bears to the total value and price paid for all said water companies."

In attacking the judgment as erroneous, the first contention of the appellant water

company is that the option clause of the charter is so vague, with respect to the formula to be used in determining the price to be paid by the city, that the option could never at any time have been enforced. The company's second contention is that, even if it should be conceded that the option clause originally had an enforceable meaning, the lapse of time and the various changes of ownership have created a situation in which the option clause cannot be enforced according to its original meaning. Underlying both contentions is the idea, with which we agree, that this action, although termed an action for a declaration of rights, is in substance one seeking specific performance of the charter contract, and therefore is to be controlled by the principles of law relating to the specific performance of contracts.

We consider it unnecessary to determine whether the option clause is sufficiently definite, with respect to the terms "receipts" and "the whole amount expended," so that it could have been enforced had the original water company remained in existence and continued to own the system, having available at all times a complete record of its investment, operating expenses, and revenues. The facts are that the original company did not remain in existence, the water system has changed hands three times, none of the financial records of the original company and the Middlesborough Water Works are available, and some of the financial records of the Kentucky Utilities Company are not available. It is conceded by both parties that it would be impossible to ascertain the historical cost of the water system, or the net revenues during the period the system has been in operation.

■■ It seems obvious to us that the option clause of the charter contemplated that the original company would continue in existence, and that from its records the city would be able to ascertain the "amount expended" and the "receipts." It will be observed that the option was to purchase "the said corporation," "its" franchise and all "its" property, giving consideration to "its" receipts, thus indicating that the parties were thinking in terms of continuous ownership of the system by the original company. Nowhere in the charter is there any reference to a sale or assignment of the charter to another company.

■■ Here, 60 years after the charter was granted, we have a situation that was not within the contemplation of the parties. The contract as written cannot be enforced, because the corporation that was authorized to be purchased does not exist and its records are gone. The judgment of the lower court represents an effort to enforce the contract according to an approximation of the intent of the parties. The *cy pres* doctrine is not applicable to ordinary contracts, and if a contract cannot be enforced according to its terms the courts have no authority to substitute a different contract, even though the substituted contract may be similar to the original in its general purpose. As stated in 49 Am.Jur., "Specific Performance," sec. 171, p. 194: "In rendering a decree of specific performance, the court has no power to decree performance in any other manner than according to the agreement of the parties. The court should not assume to make a new contract for the parties and then decree its specific performance, or undertake to compel the defendant to do something he did not contract or agree to do, but should enforce the contract in question according to its terms or not at all. * * *"

It is difficult to determine what purpose was intended to be accomplished by the charter provision in question, and whether it was designed for the benefit of the city or for that of the water company. For some reason, the purchase price was to be the "amount expended," with a ten per cent profit guarantee, instead of the value of the property at the time of exercising the option. We must assume that the parties had a definite object in mind in so providing. If the price paid by a distant willing purchaser of the properties of the system is to be treated as the "amount expended," then the result is the same as if the contract had provided for purchase at current market value, which it did not do.

It is our conclusion that the option died when the original corporation went out of existence, and we cannot substitute a different option in its place. This conclusion

renders unnecessary a discussion of a number of other reasons advanced by the appellant for holding the option unenforceable.

The judgment is reversed, with directions to enter a judgment declaring that the city does not have the right to purchase the water system under the charter provision.