Chester E. NORK, Appellant,

v.

**FETTER PRINTING
COMPANY, Appellee.**

Patricia Lynn SCHEURICH, Appellant,

v.

**CROSS MOTORS CORPORATION,
Wayne Cardwell, Joe Cross, Jr.,
and Joe Cross, Sr., Appellees.**

Betty BAKER, Appellant,

v.

**Robert SLACK and Wal–Mart Stores,
Inc., Appellees.**

Nos. 86–CA–598–MR, 86–CA–661–MR,
86–CA–785–MR.

Court of Appeals of Kentucky.

June 12, 1987.

Rehearing Denied Aug. 14, 1987.

Discretionary Review Denied by Supreme
Court Nov. 17, 1987.

W. David Shearer, Jr., John Allen Taylor, Louisville, for appellant, Chester E. Nork.

Robert G. Breetz, Brooks D. Kubik, Stites & Harbison, Louisville, for appellee, Fetter Printing Co.

Oliver H. Barber, Jr., Thomas J. Banaszynski, Louisville, for appellant, Patricia Lynn Scheurich.

Raymond M. Clooney, Thomas R. Kelley, Jr., William P. Hurley, Jr., Louisville, for appellees, Cross Motors Corp., Wayne Cardwell, Joe Cross, Jr., and Joe Cross, Sr.

J. Quentin Wesley, Wesley, Simpson and Hooks, Morganfield, for appellant, Betty Baker.

Ralph W. Wible, Holbrook, Gary, Wible & Sullivan, Owensboro, Ronald Williams, Wal-Mart Stores, Inc., Bentonville, for appellees, Robert Slack and Wal-Mart Stores, Inc.

Before COMBS, COOPER and HAYES, JJ.

COMBS, Judge.

These cases were appealed simultaneously and present common material facts and issues relating to actions for wrongful discharge from employment. The recent spate of these actions and their subsequent appeals makes it obvious that those concerned are in a quandary about when employment is "at will," what effect, if any, employee manuals or handbooks have upon the status of the employment, and when and in what fashion an employee may be discharged.

We will first establish the sequence of events in each case so that their common pattern may be seen. The terminated employee's complaint was dismissed in every case; Scheurich's by directed verdict, Baker's and Nork's by summary judgment.

## I. NORK.

Appellee Fetter Printing Company (Fetter) is engaged in the business of commercial printing. Appellant Nork was hired by Fetter in 1961, and he initially performed general building maintenance. One and one half years later he began work as a monotype operator in Fetter's hot metal hand composition department. Once in this department Nork worked there to the virtual exclusion of any other job detail.

One of Fetter's major customers, Belknap Hardware Company, notified Fetter that in the future it wanted its printing needs to be fulfilled through word processing systems, not hot metal hand composing. The latter printing process is rapidly becoming obsolete, if indeed it is not so already. Nork was notified of Belknap's decision at a company meeting in February,

1984. As the hot metal composing department's function was to produce printed matter for Belknap, Nork and other Fetter personnel were also notified that this action by Belknap probably would mean the elimination of the hot metal hand composing department. Nork and the other employees were notified at this meeting that some of them would be given different assignments, but others would lose their jobs. No one at Fetter ever promised or in any other way indicated to Nork that he would be one of those retained. As it happened, the hot metal hand composing department was eliminated, and that machinery was dismantled. Nork's employment with Fetter ceased in October, 1985.

Nork filed his claim for wrongful discharge against Fetter stating that an employee handbook issued by Fetter for its employees created a contract implied in fact, and portions of the handbook prohibited Fetter's manner of discharging him. Assuming Nork was discharged as within the realm of wrongful discharge actions, we reject his claim and affirm the trial court's judgment.

When Nork sought employment with Fetter in 1961, Fetter had express language printed on its application forms notifying every prospective employee that: "It is further agreed that this contract may be terminated at will by either the employer or employee." This appeared immediately above Nork's signature. Thus, unless there was a subsequent alteration of the "at will" agreement between Nork and Fetter, Nork's claim must fail. Nork says the employee handbook altered the agreement. However, we have reviewed the handbook and find nothing therein which expressly creates a contract. It contains policy statements which Fetter management admittedly strove to follow, but this is not tantamount to an expression of a contractual agreement where the language is not contractual.

## II. SCHEURICH

Appellant Scheurich began working for Cooke Pontiac in 1973. The dealership became known as Cross Motors, the appellee,

in approximately 1979. Appellant was presented with a "Policy and Procedures Manual" by her employer in May, 1983. The manual consisted of 28 pages which for the most part described Cross Motors' ideals, expectations and assurances, and methods of dealing with employees. The last page of the manual, immediately above where appellant signed for receipt of the manual, contained the following language:

I understand that this manual is a summary of the policies and rules which guide CROSS MOTORS in its relationship with its employees. It is not a contract of employment, and I do not construe it as such. I understand it is terminable at the will of either the employee or the employer. The policies and procedures contained in this manual are not conditions of employment. I understand that CROSS MOTORS may revise the policies or procedures in the manual, in whole or in part, at any time, with or without notice.

Appellant was discharged from her employment in November, 1983, as a result of management's allegations that she knowingly prepared a false repair order. She alleges on appeal that the trial court erred by not recognizing the Policy and Procedures Manual as evidence of a contract of employment, with its terms, and specifically those relating to discharge, as binding upon the employer and employee. Thus, says the appellant, the directed verdict was unjust, and her case should have gone to the jury for consideration of whether the manual evidenced an employment contract; whether its procedures were followed, and whether the employer dealt with her in good faith. We affirm the verdict of the trial court.

## III. BAKER

Appellant Baker is a former employee of appellee, Wal-Mart Stores, Inc., at Wal-Mart's Morganfield, Kentucky outlet. Appellee, Robert Slack, was appellant's manager at that store.

The cause of Baker's separation from her work was Wal-Mart's and Slack's belief that during one workday she gave the company's rubber stamp to an employee of the local health department, one Sue Cunningham, and she in turn left the store in possession of the stamp. The health department routinely purchased goods from Wal-Mart and would have a Wal-Mart employee stamp their vouchers with the company stamp. This is the only transgression alleged against Baker's job performance. There is conflicting testimony as to whether this actually happened.

Baker sued for wrongful discharge. She complained that Wal-Mart's employee manual in existence throughout the time from her hiring to her discharge is a contract of employment. The relevant portion of the manual states:

It should be clearly understood that the continued employment of any associate of the Company will depend upon the successful performance of all work assigned to the associate, and the general following of the guidelines of this booklet, during a trial period of up to ninety (90) days, and upon the continued successful performance and the further need of the associate's continued employment by the Company.

Baker argues that this language of the manual, as it amounts to an employment contract, acts to separate the employer/employee relationship from the "at will" doctrine which allows either party to terminate the employment at will. The trial court rejected Baker's arguments and dismissed her complaint in response to appellees' motion pursuant to CR 56.

We disagree with Baker's assertion that the employee manual amounts to a contract, and affirm the judgment of the trial court.

## IV. THE SHAH AND GRZYB DECISIONS.

The Kentucky Supreme Court in *Shah v. American Synthetic Rubber Corp.*, Ky., 655 S.W.2d 489 (1983), held that parties may enter into a contract of employment terminable only pursuant to its express terms by clearly stating their intention to do so. *Shah, supra,* at 492. Otherwise the employment is "at will," and

may be terminated, in the main, by either party for any reason or no reason at all. There are two exceptions to the "at will" rule. There can be no discharge of an "at will" employee if it would violate either of two public policies. The first, discharge for failure or refusal to violate the law in the course of employment; the second, discharge for the employee's exercise of a statutorily conferred right. *Grzyb v. Evans*, Ky., 700 S.W.2d 399 (1985).

■ The Wal-Mart manual in Baker's case did not elevate the status of her employment to that of contract due to its statements that the employment would become permanent after ninety days, or conditioning the employment's duration upon continued successful performance. *Shah, supra,* at 491.

■ Scheurich's facts yield no evidence of any contract of employment at the time she was hired. Thus she at least initially was employed at will. She and Cross Motors were free to contract at anytime. Scheurich claims this was done by the manual and both parties' reliance upon it. Scheurich tries to argue away the clear language appearing on the manual's final page by referring to the manual's procedural guidelines, and both parties' reliance upon them. Appellant would give contract status to the manual and nullify the clearly stated disclaimer. This cannot be done without totally annihilating *Shah*'s holding of "clear intention." If appellant's reasoning is thought through to its logical conclusion, virtually every policy and procedure manual would create a contract of employment; those without a disclaimer would because they would have no disclaimers, and those with disclaimers would because the disclaimers would be nullities.

■ Nork also alleges on appeal that the trial court erred in granting summary judgment because further discovery would have produced genuine issues of material fact. What is a material fact is determined by the substantive law of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Viewing the evidence in the light most favorable to Nork, including the express agreement that the employment was "at will", the handbook's contents, and statements and admissions of Nork and Fetter management, we do not see how further discovery could have produced any material facts. We hold for the above reasons that the trial court's judgment should be affirmed.

We also believe there is an additional, much more fundamental, reason for affirming the summary judgment in Nork's case. A *sine qua non* for a cause of action for wrongful discharge, be it from employment at will or contract employment, is that the complaining employee was actually discharged as opposed to laid off due to a reduction in demand for the product or service. The situation in the instant case is not such that the appellant was fired and then another worker retained or hired to continue performing his former duties in the hot metal composing department. Rather, the hot metal composing department was dismantled and discontinued altogether. Appellant himself considered his separation from work a layoff, and so characterized it in his claim for unemployment insurance benefits. It would be a grotesque and unfair form of the wrongful discharge action if maintained due to a business' product becoming obsolete. The progression of history is replete with examples of technological innovations which have created new markets and destroyed old ones. An employee at a buggy factory could hardly have been considered "wrongfully discharged" when the advent of the automobile eliminated any appreciable demand for buggies. An action for wrongful discharge does not lie for one whose loss of work is actuated by the elimination of the job itself due to legitimate economic or business reasons, and not as a bad faith pretext to terminate the worker.

Policy and procedure manuals are to be commended. They can, when followed, remove an element of arbitrariness from employment relationships and thereby improve the entire atmosphere of the workplace. A contract they do not necessarily make, and in these three cases did not make. These were "at will" employees. Their discharges did not involve either of

the public policy violations found in *Grzyb.* Thus, the judgments and verdict of the trial courts are hereby affirmed.

All concur.