60 F.3d 828
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 John HUGHES, Plaintiff-Appellant,
v.
DHL WORLDWIDE EXPRESS, Defendant-Appellee.
 No. 94-3185.
 United States Court of Appeals, Sixth Circuit.
 July 6, 1995.
 
 Before: MILBURN and NELSON, Circuit Judges, and JOINER, District Judge.*
 PER CURIAM.
 
 
 1
 This is an appeal from a summary judgment in favor of the defendant in an action for wrongful discharge and defamation. We are asked to decide two questions: (1) whether a jury could have been permitted to find that the plaintiff was employed on terms that allowed him to be discharged only for cause, and (2) whether a jury could have been permitted to find that the defendant published false and defamatory statements about the plaintiff with actual malice. Upon de novo review of the record we conclude, as did the district court, that both questions must be answered in the negative.
 
 
 2
 * The plaintiff, Kentucky citizen John Hughes, worked as a pilot for the defendant, California-based DHL Worldwide Express. Before he was hired Mr. Hughes signed an employment application containing the following agreement:
 
 
 3
 "My employment is in accordance with any applicable written agreement and applicable personnel practices published to employees and, subject to any such agreement or such personnel practices, may be terminated by me or DHL at any time."
 
 
 4
 The term of Hughes' employment was indefinite, and DHL and Hughes never executed a written agreement limiting the company's right to terminate the employment whenever it chose. DHL did, however, publish personnel practices that established a probationary period for new employees, prescribed disciplinary actions for various types of misconduct, and established a three-step appeals process for employees aggrieved by adverse personnel actions. The publication in question (an employee handbook) was silent as to whether non-probationary employees could be discharged only for cause.
 
 
 5
 The incident that precipitated DHL's decision to discharge Mr. Hughes occurred on April 16, 1991, when Hughes was serving as captain on a jet airplane flown by first officer Steve Colangelo. Just after the plane took off that morning Hughes retracted the landing gear and turned the gear handle to the off position. Second officer Todd Wilson thereupon reported that a red geardoor light had come on. Hughes says that he instructed the crew to disregard the red light, but Colangelo and Wilson say they recall no such instruction. Be that as it may, Colangelo reached over to raise the gear handle, apparently believing that Wilson was calling for him to do so. Colangelo claims that Hughes shouted at him not to do that and angrily struck him on the forearm. Wilson says that Hughes slapped Colangelo's hand as it came off the gear handle. Hughes denies that he struck or slapped Colangelo, but acknowledges that their hands came in contact. For present purposes we accept Hughes' account as accurate.
 
 
 6
 Colangelo and Wilson wrote out statements describing the incident. The statements were transmitted, through an intermediary, to James Driscoll, Assistant Chief Pilot for DHL. After conducting an investigation, the scope of which is in dispute, Driscoll decided to discharge Hughes.
 
 
 7
 Driscoll's decision, and the reasons for it, were set forth in a memorandum to Hughes dated May 7, 1991. This memorandum, copies of which went to three other people, began by saying that "you, as Pilot-in-Command, acted contrary to Federal Aviation Regulations and company policies, jeopardizing the safety of the flight by physically striking the First Officer during the takeoff phase of flight." The memorandum cited FAA regulations and DHL policies that were said to have been violated, including policies against fighting, and went on to state that "[y]our decision to use physical force to communicate with the First Officer rather than verbal commands ... jeopardized the safety of this flight and its crew."
 
 
 8
 Mr. Hughes utilized DHL's appeals process in an effort to have his discharge rescinded, but he was unsuccessful. This lawsuit, in which the plaintiff invoked the diversity jurisdiction of the federal courts, was filed on May 7, 1992. DHL moved for summary judgment in August of 1993, and the district court (Spiegel, J.) granted the motion in a comprehensive opinion and order filed in January of 1994. Mr. Hughes perfected a timely appeal to this court, and the case has been briefed and argued.
 
 II
 
 9
 Under Kentucky law, which the parties agree is applicable here, the presumption is that employment for an indefinite period of time may be terminated by either party at will. Shah v. American Synthetic Rubber Corp., 655 S.W.2d 489, 491 (Ky. 1983). The parties are free to enter into an employment contract terminable only for cause, but their intention to do so must be stated "clearly." Id. at 492.
 
 
 10
 The agreement contained in Mr. Hughes' employment application clearly provided that his employment was to be at will, subject to "applicable personnel practices published to employees." As a matter of law, we believe, the at-will feature of the employment relationship was not overridden by the DHL handbook. This is so notwithstanding that the handbook prescribes a probationary period for newly hired employees and a system of progressive discipline with an appeals process. The handbook does not state that employees can be discharged for any reason during their probationary period, and the mere fact that there is a probationary period does not mean that the employee can be discharged only for cause once the probationary period has ended. See Nork v. Fetter Printing Co., 738 S.W.2d 824, 827 (Ky. Ct. App. 1987). As far as the system of progressive discipline is concerned, the handbook explicitly states that "[t]he use and timing of the various forms of discipline ... will be within the discretion of management."
 
 
 11
 Mr. Hughes argues that the at-will relationship has been altered by statements in the handbook and elsewhere designed to discourage unionization. But these statements, which suggest that DHL's appeals process is superior to the typical union grievance procedure, do not constitute the clear statement of intention that is necessary to opt out of a relationship terminable at will.[1]
 
 
 12
 Kentucky law encourages employers to issue manuals such as DHL's. An employer who attempts to follow fair termination policies does not automatically abandon the customary at-will arrangement. Nork v. Fetter Printing, 738 S.W.2d at 827. The district court was correct in concluding that there was no implied "for cause" contract here.
 
 III
 
 13
 As to his defamation claim, Mr. Hughes concedes that unless the statements that DHL made in terminating his employment were made with malice, DHL is protected by the doctrine of qualified privilege. The dispositive issue is whether a jury could be permitted to find that the statements were in fact made with malice.
 
 
 14
 Malice "requires at a minimum that the statements were made with a reckless disregard for the truth ... [meaning] the defendant must have made the false publication with a high degree of awareness of probable falsity, or must have entertained serious doubts as to the truth of his publication." Warford v. Lexington Herald-Leader Co., 789 S.W.2d 758, 771 (Ky. 1990) (citations omitted). The person attempting to defeat the privilege has the burden of showing malice by clear and convincing evidence. Id.
 
 
 15
 No such evidence was presented here. The termination memorandum tells Mr. Hughes in essence that "when you struck Mr. Colangelo, you violated the policy in DHL's Personnel Guide against physical fighting and the policies in the DHL Employee Handbook against fighting and threatening another with bodily harm." Because Mr. Colangelo did in fact claim that Mr. Hughes had struck him, the memorandum is insufficient to raise an inference of malice -- and there is no evidentiary support for the proposition that DHL's investigation displayed a reckless indifference to the truth of Colangelo's charge.
 
 
 16
 Our conclusion that there was no jury issue as to malice makes it unnecessary for us to decide whether Kentucky would follow the "self-publication" rule.
 
 
 17
 AFFIRMED.
 
 
 
 *
 The Honorable Charles W. Joiner, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Mr. Hughes relies heavily on Trusty v. Big Sandy Health Care, Inc., 38 K.L.S. 4 (Ky. Ct. App. 1991) (an employer cannot ignore policy statements made with a view to obtaining the benefit of improved employee attitudes and behavior and improved quality of the work force), and Norris v. Filson Care Home Ltd., No. 89-CA-0599-MR (Ky. Ct. App. 1990) an employee manual without a disclaimer can modify an explicit statement of "at will" employment on an application form). In denying discretionary review of Big Sandy and Norris, however, the Kentucky Supreme Court explicitly ordered that the court of appeals opinions not be published. These opinions thus may not be used as authority in any other case. CR 76.28(4)(c)