**PARTS DEPOT, INC.; and CSD America, Inc., Appellants**

v.

**Lynn BEISWENGER, Appellee.**

**Housing Authority of Middlesborough, Appellant**

v.

**Charles Smith; and Eddie Harrell, Appellees.**

Nos. 2002–SC–0948–DG, 2004–SC–0124–DG.

Supreme Court of Kentucky.

Aug. 25, 2005.

Mitzi D. Wyrick, Angela C. McCorkle, Wyatt, Tarrant & Combs, Louisville, KY, Ellen E. Boshkoff, Kathy L. Osborn, Baker & Daniels, Indianapolis, IN, Counsel for Appellants (2002–SC–0948–DG).

Donald Duff, Frankfort, KY, Glenn L. Greene, Jr., Harlan, KY, Counsel for Appellant (2004–SC–0124–DG).

Philip C. Kimball, Louisville, KY, Counsel for Appellee (2002–SC–0948–DG).

Bradley C. Freeman, Corbin, KY, Counsel for Appellees (2004–SC–0124–DG).

Kembra Sexton Taylor, Labor Cabinet, Frankfort, KY, Counsel for Amicus Curiae Commissioner of the Department of Labor (2004–SC–0124–DG).

Opinion of the Court by Justice
COOPER.

We have consolidated these two appeals because they present a common issue, *viz:* Does a circuit court have original subject matter jurisdiction over a wage and hour dispute between an employer and employee, or is original jurisdiction over all such disputes vested exclusively in the Depart-

ment of Labor by KRS Chapters 336 and 337, subject to only appellate review by the Court of Justice after exhaustion of administrative remedies? Each of these appeals involves a claim that an employer did not pay an employee the agreed compensation for services rendered. In each case, a circuit court determined that it did not have jurisdiction to resolve the dispute. Those decisions were reversed by separate panels of the Court of Appeals; but even those panel members agreeing with the result did not fully agree in the reasoning. Further, the only two previous published opinions addressing the subject, *Early v. Campbell County Fiscal Court*, 690 S.W.2d 398 (Ky.App.1985), and *Noel v. Season–Sash, Inc.*, 722 S.W.2d 901 (Ky.App.1986), reached opposite results on different reasoning. We now affirm the decisions of the panels of the Court of Appeals in the case *sub judice*, and overrule *Noel* in part and *Early* in its entirety.

On April 10, 2001, Lynn Beiswenger sued Parts Depot, Inc., and CSD America, Inc., in the Shelby Circuit Court alleging that the two corporations had jointly employed him in various capacities from October 26, 1998, through January 20, 2001, and that they refused to pay him $29,250.00 in compensation, which they had agreed to pay for his services. Beiswenger alleged a violation of KRS 337.055 ("Any employee who leaves or is discharged from his employment shall be paid in full all wages or salary earned by him. . . ."), and brought his action pursuant to KRS 337.385(1) (action may be maintained in any court of competent jurisdiction to recover unpaid wages earned, an additional equal amount in liquidated damages, and for costs and reasonable attorney fees). The Shelby Circuit Court

dismissed the action for lack of subject matter jurisdiction. The Court of Appeals reversed and remanded with directions to permit Beiswenger to proceed with his action. The only issue presented by this appeal is the jurisdictional one.

On June 10, 1997, a complaint was filed with the Kentucky Labor Cabinet (now Department of Labor) alleging that the Housing Authority of Middlesborough[1] ("HAM") was not paying its "on call" maintenance employees at the on-call rate established in HAM's personnel policy. Pursuant to KRS 337.345, the name of the complainant remains confidential. An investigator from the Labor Cabinet investigated the complaint and reported that the complainant was not an "on call" employee. The Cabinet took no further action.

On January 20, 1998, Charles Smith and Eddie Harrell, two of HAM's maintenance employees, sued HAM in the Bell Circuit Court alleging that HAM had breached its contractual obligation to compensate them for their services at the on-call rate. HAM's personnel policy, officially adopted by HAM's board of commissioners on September 17, 1991, provides in pertinent part:

> c. *"ON CALL" Employees.* An "On Call" employee is an employee working for the Housing Authority on a regular shift and is then required to be available to meet work requirements which arise outside of the employee's normal duty hours.

> "On Call" maintenance employees who are provided a dwelling unit at reduced rent for restriction of time, shall be paid one and one-half times their basic hourly

---

1. The record does not explain why the Housing Authority's name is spelled differently from that of the city of Middlesboro, where the Housing Authority is located. However, it appears that the city was originally named "Middlesborough." *See Kentucky Water Serv. Co. v. City of Middlesboro*, 247 S.W.2d 40, 41 (Ky.1952).

rate for all hours worked in excess of eight.

Maintenance employees who are not furnished a dwelling unit at reduced rates, and are required to be available after their normal duty hours, shall be paid for their restriction of time and the equivalent of one hour at one and one-half times the basic hourly rate for each day they are required to be "On Call." In addition, these employees shall be paid at the rate of one and one-half times their basic hourly rate for all hours worked in excess of eight.

d. *"Subject to Call" Employees.* "Subject to Call" employee is an employee who may be called by the Public Housing Authority (PHA). The employee is not *required* to be available to the PHA. All maintenance employees not "On Call" are considered "Subject to Call." These employees shall be paid at the rate of one and one-half times their basic hourly rate for hours actually worked in excess of 40 hours per week. (Part-time employees may, at the option of the PHA, be paid one and one-half times their basic hourly rate for hours actually worked excess [sic] of their *normal* work week.)

HAM added the "subject to call" status to its personnel policy in 1991 at the suggestion of the Federal Housing Authority. Smith and Harrell assert that they were "on call" maintenance employees and were neither provided a dwelling unit at reduced rent nor compensated at the on-call monetary rate. HAM asserts that Smith and Harrell were "subject to call" employees, not "on call" employees. Smith and Harrell neither asserted a violation of KRS 337.060 ("No employer shall withhold from any employee any part of the wage agreed upon.") nor purported to file their action under the authority of KRS 337.385(1).

Their complaint can best be characterized as one for common law breach of contract.

The Bell Circuit Court initially granted summary judgment to the employees and, after a bench trial, awarded damages of $28,665.70 to Smith and $11,308.26 to Harrell, plus added contributions to Smith's and Harrell's retirement accounts commensurate with the unpaid wages. The Court of Appeals reversed in an unpublished opinion, No. 1999–CA–000765–MR (August 25, 2000), concluding that there existed a factual issue as to whether Smith and Harrell were "on call" or "subject to call" employees, thus precluding summary judgment. *See Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.,* 807 S.W.2d 476, 480 (Ky. 1991). On remand, the Bell Circuit Court granted HAM's belated motion to dismiss the action for lack of subject matter jurisdiction. *See Privett v. Clendenin,* 52 S.W.3d 530, 532 (Ky.2001) ("Defects in subject-matter jurisdiction may be raised by the parties or the court at any time and cannot be waived."). The Court of Appeals reversed and remanded with directions to permit Smith and Harrell to proceed with their action.

In addition to the jurisdiction issue, we will also address HAM's assertion that its personnel policy does not confer contractual rights upon its employees such as would give rise to a cause of action for breach of contract.

## I. JURISDICTION.

KRS 337.385, enacted as part of the 1974 General Assembly's major revision of Kentucky's Wages and Hours Act, 1974 Ky. Acts, ch. 391, § 9, provides:

(1) Any employer who pays any employee less than wages and overtime compensation to which such employee is entitled under or by virtue of KRS 337.020 to 337.285 *shall be liable* to such employee affected for the

full amount of such wages and overtime compensation, less any amount actually paid to such employee by the employer, for an additional equal amount as liquidated damages, and for costs and such reasonable attorney's fees as may be allowed *by the court.* Provided, that if, in any action commenced to recover such unpaid wages or liquidated damages, the employer shows to the *satisfaction of the court* that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of KRS 337.020 to 337.285, *the court may,* in its sound discretion, award no liquidated damages, or award any amount thereof not to exceed the amount specified in this section. Any agreement between such employee and the employer to work for less than the applicable wage rate shall be no defense to such action. *Such action may be maintained in any court of competent jurisdiction by any one (1) or more employees for and in behalf of himself or themselves.*

(2) At the written request of any employee paid less than the amount to which he is entitled under the provisions of KRS 337.020 to 337.285, the commissioner may take an assignment of such wage claim in trust for the assigning employee and *may bring any legal action necessary* to collect such claim, and the employer shall be required to pay the costs and such reasonable attorney's fees as may be *allowed by the court.* The commissioner *in case of suit* shall have power to join various claimants against the same employer in one (1) action.

(Emphasis added.)

Subsection (1) unambiguously authorizes an uncompensated or undercompensated employee to sue the employer in "any court of competent jurisdiction" for the amount due and unpaid, plus liquidated damages, costs and attorney fees. If the amount is $4,000.00 or less, the court of competent jurisdiction is the district court. KRS 24A.120(1). Otherwise, it is the circuit court. Ky. Const. § 112(5). KRS 337.385 is substantially similar to 29 U.S.C. § 216(b)[2] of the federal Fair Labor Standards Act, which also authorizes a private cause of action by an employee against an employer to recover damages, including liquidated damages and attorney fees, for failure to pay wages owed for services rendered. KRS 337.385(2) is admittedly less clear than subsection (1), but the phrases "any legal action necessary" and "in case of suit" appear to authorize the commissioner to file suit on behalf of the employee in a court of competent jurisdiction.[3] Undoubtedly, the General Assembly

**2.** In *Alden v. Maine,* 527 U.S. 706, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999), the United States Supreme Court held 29 U.S.C. § 216(b) unconstitutional insofar as it authorized a state to be sued by a state employee in state court. *Id.* at 712, 119 S.Ct. at 2246.

**3.** *See also* KRS 336.985(1) ("The commissioner ... shall initiate enforcement of civil penalties imposed in KRS Chapters 336, 337, and 339.") and (3) ("[T]he commissioner ... shall initiate a civil action to collect the penalty ... in the court which has jurisdiction over the

location in which the violation occurred."). We do not decide today whether those statutes preclude attempts to enforce the penalty provisions of the statutory scheme through administrative adjudication, or whether the phrase "any legal action necessary" in KRS 337.385(2) authorizes the commissioner to pursue an administrative adjudication against the employer on behalf of the employee. We only decide that KRS 337.385(1) authorizes the employee, or the commissioner on behalf of the employee, to bring an action in circuit

included the liquidated damages provision in subsection (1) and omitted it from subsection (2) as an incentive for employees to hire their own attorneys and pursue their own claims, thereby relieving the commissioner of much of the burden of litigation.

Appellants urge that KRS 337.310 vests exclusive jurisdiction of all wage-and-hour disputes in the Department of Labor, requiring Appellees to exhaust administrative remedies and limiting circuit court jurisdiction to appellate review. KRS 337.310 now provides: "All orders or decisions of the secretary issued or made under KRS 337.020 to 337.405 may be appealed, and upon appeal an administrative hearing shall be conducted in accordance with KRS Chapter 13B." However, the pre–1996 version of KRS 337.310 provided:

(1) All questions of fact arising under KRS 337.020 to 337.405 except as provided in this section, shall be decided by the secretary. There shall be no appeal from the decision of the secretary on any question of fact, but there shall be a right of review by the Circuit Court. Either party may, within twenty (20) days after the rendition of a final order of the secretary, by petition appeal to the Circuit Court that would have jurisdiction to try an action for breach of contract.

(2) The review is limited to determining whether or not:

(a) The secretary or director acted without or in excess of his powers;

(b) The order or decision was procured by fraud;

(c) The order or decision is not in conformity to the provisions of KRS 337.020 to 337.405; and

(d) If findings of fact are in issue, whether they support the order or decision.

or district court against the employer for un-

(3) The Circuit Court shall enter judgment affirming, modifying, or setting aside the order or decision.

The statute was a provision of the Women and Minors' Employment Act, 1938 Ky. Acts, ch. 105, a comprehensive statutory scheme establishing procedures to ensure that women and minors were neither overworked nor underpaid. That scheme was subsequently codified within the Wages and Hours Act under the title "Women and Minors." The first part of the scheme, KRS 337.220–.360, created an elaborate system of wage boards, directory orders, and mandatory orders fixing the minimum fair wage for women and minors in various job classifications. KRS 337.310 was included within that scheme. However, it clearly was not intended to preclude women and minors from resorting to the courts for collection of unpaid wages; for, as originally enacted, the last statute in that scheme, KRS 337.360, provided:

If any woman or minor worker is paid by his employer less than the minimum fair wage to which he is entitled under a mandatory minimum fair-wage order he may recover in a civil action the full amount of the minimum wage less any amount actually paid to him by the employer together with costs and such reasonable attorney's fees as are allowed by the court. Any agreement between him and his employer to work for less than the mandatory minimum fair wage shall be no defense to the action. At the requisition of any woman or minor worker paid less than the minimum wage to which he was entitled under a mandatory order, the commissioner may take an assignment of the wage claim in trust for the assigning employe and may bring any legal action necessary to collect the claim. The employer shall be

paid salary or wages.

required to pay the costs and such reasonable attorney's fees as are allowed by the court. The commissioner shall not be required to pay the filing fee, or other costs, in connection with such action.

That is virtually the same language now contained in KRS 337.385, except that it only applied to women and minors and did not include a liquidated damages clause. Adult men could sue for unpaid wages under KRS 337.020, but that statute did not provide for recovery of attorney fees. In *W.W. Mac Co. v. Teague*, 297 Ky. 475, 180 S.W.2d 387 (1944), our predecessor court rejected an equal protection challenge under Section 3 of our Constitution and a special legislation challenge under Section 59(29), and held, without mentioning KRS 337.310, that "[t]he effect of this provision is that in case an employer violates the Women and Minors' Employment Act by paying less than the wages prescribed by the Commissioner of Industrial Relations [now Department of Labor], the full amount of the minimum wage may be recovered, together with the costs of the action and a reasonable attorney's fee." 180 S.W.2d at 389. The 1966 General Assembly amended the Women and Minors' Act to extend its fair-wage provisions, including KRS 337.360, to "any employee." 1966 Ky. Acts, ch. 158, § 9.

The second part of the Women and Minors' Act, KRS 337.365–.400, dealt with working hours for women and minors, mandating rest periods and limiting the number of hours that women and minors could work in certain occupations to ten hours per day and sixty hours per week. KRS 337.410 provided that "[t]he department shall have exclusive jurisdiction over the administration and enforcement of KRS 337.370 to 337.400." There was no

similar provision in the "minimum fair wage" scheme of the Act.

In its 1974 revision of the Wages and Hours Act, the General Assembly repealed those provisions establishing wage boards, directory orders, and mandatory orders pertaining to minimum fair wages for women and minors. It also repealed those provisions mandating rest periods and limiting working hours for women and minors. In their place, it enacted statutes adopting the minimum wage mandated by the federal Fair Labor Standards Act, 29 U.S.C. § 206(a)(1), 1974 Ky. Acts, ch. 391, § 2 (KRS 337.275), including time and a half for overtime, 1974 Ky. Acts, ch. 391, § 3 (KRS 337.285), and requiring lunch periods and rest periods for all employees. 1974 Ky. Acts, ch. 333, § 1 (KRS 337.355); 1974 Ky. Acts, ch. 386, § 106 (KRS 337.365). It also enacted KRS 337.055 (payment of all wages to employee who leaves or is discharged), 1974 Ky. Acts, ch. 275, § 1, and repealed KRS 337.410. It did not replace KRS 337.410 with a similar provision vesting in the department exclusive jurisdiction over the administration and enforcement of any provision of the Wages and Hours Act. *See generally* 1974 Ky. Acts, ch. 391.

The 1974 General Assembly also repealed KRS 337.360, 1974 Ky. Acts, ch. 391, § 14, and replaced it with KRS 337.385, adding the liquidated damages provision. 1974 Ky. Acts, ch. 391, § 9. It retained KRS 337.310, amending it only to provide that "[a]ll questions of fact arising under *this Act and KRS 337.340* ... shall be decided by the commissioner." 1974 Ky. Acts, ch. 391, § 5 (emphasis added). The 1978 General Assembly amended that language again to read "[a]ll questions of fact arising under *KRS 337.020 to 337.405* ...." 1978 Ky. Acts, ch. 340, § 3 (emphasis added).[4] Thus, KRS 337.310

4. The 1978 General Assembly also amended KRS 337.060 ("No employer shall withhold

then provided that all questions of fact arising under the Wages and Hours Act would be decided by the commissioner, subject to judicial review, except that the commissioner's findings of fact would be conclusive; and KRS 337.385(1) provided that the employee could sue in a "court of competent jurisdiction" for unpaid wages, liquidated damages, costs, and attorney fees.

In *Early v. Campbell County Fiscal Court*, 690 S.W.2d 398 (Ky.App.1985), a panel of the Court of Appeals addressed the seeming conflict between KRS 337.310 and KRS 337.385(1) and held that KRS 337.385(1) referred only to the appellate jurisdiction conferred by KRS 337.310. *Id.* at 399. The panel did not further explain the consequences of its holding. However, it must have meant that, despite KRS 337.385(1)'s references to "the court" allowing reasonable attorney fees, "the court" finding good faith on the part of the employer, and "the court" exercising its sound discretion, and despite the statute's recitation that "[s]uch action may be maintained in any court," the commissioner would decide in an administrative proceeding the issues of whether wages were improperly withheld, whether liquidated damages should be imposed, and the amount of costs and attorney fees to be awarded, subject only to judicial review.

The following year, the same issue arose before a different panel of the Court of Appeals in *Noel v. Season–Sash, Inc.*, 722 S.W.2d 901 (Ky.App.1986). That panel rejected an interpretation of *Early* that all wage disputes must originate before the commissioner (despite the precise language of *Early*), 722 S.W.2d at 903, and "refined" *Early* to mean that KRS 337.310 applies only to a wage dispute when the

employer has failed to pay the minimum wage required under KRS 337.275 and KRS 337.285, and that KRS 337.385 applies to all other contractual disputes regarding unpaid wages. *Id.* However, it did not explain why the language in KRS 337.310 that applied that provision to "[a]ll questions of fact arising under KRS 337.020 to 337.405" did not apply to questions of fact arising under KRS 337.055 (failure to pay all wages due when employee leaves or is discharged) or KRS 337.060 (failure to pay any part of the wage agreed upon).

■ We conclude that both *Early* and *Noel* misconstrued the effect of the statutory scheme. "The applicable rule of statutory construction where there is both a specific statute and a general statute seemingly applicable to the same subject is that the specific statute controls." *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 819 (Ky.1992) (citing 2A *Sutherland Statutory Construction* § 51.05 (4th ed. 1984)). *See also Travelers Indem. Co. v. Reker*, 100 S.W.3d 756, 763 (Ky.2003); *Commonwealth v. Phon*, 17 S.W.3d 106, 107–08 (Ky.2000); *DeStock # 14, Inc. v. Logsdon*, 993 S.W.2d 952, 959 (Ky.1999). KRS 337.310 purports to apply generally to all wage and hour disputes and KRS 337.385 applies specifically to an employer's liability for unpaid wages. In fact, the title of the latter provision is "Employers liability—Unpaid wages and liquidated damages." *Early* erroneously concluded that KRS 337.310 always takes precedence over KRS 337.385; and *Noel* erroneously concluded that KRS 337.310 takes precedence over KRS 337.385 when the dispute involves failure to pay a statutory minimum wage. We now hold that KRS 337.385, the more specific statute, takes

from any employee any part of the wage agreed upon."), which had previously applied only to wages agreed upon through collective

bargaining and had required that the withholding be "willfully with intent to defraud." 1978 Ky. Acts, ch. 74, § 1.

precedence over KRS 337.310, the general statute, whenever an employee, or the commissioner on employee's behalf, chooses to exercise the judicial remedy for recovery of unpaid wages. To the extent that *Early* and *Noel* hold otherwise, they are overruled.

Our conclusion in this regard is reinforced by the fact that the 1996 General Assembly, concurrently with the effective date of the enactment of KRS Chapter 13B, again amended KRS 337.310, this time removing altogether the mandatory language that "[a]ll questions of fact arising under KRS 337.020 to 337.405 ... shall be decided by the commissioner," and replacing it with the even-more general provision that "[a]ll orders or decisions of the secretary issued or made under KRS 337.020 to 337.405 may be appealed, and upon appeal an administrative hearing shall be conducted in accordance with KRS Chapter 13B." 1996 Ky. Acts, ch. 318, § 313. Nothing in that language or in KRS Chapter 13B can be construed as conferring upon the Department of Labor exclusive jurisdiction to resolve all disputes pertaining to nonpayment of salary or wages.

## II. PERSONNEL POLICY AS CONTRACTUAL RIGHT.

■ HAM claims that it cannot be required to pay Smith and Harrell under the "on call" provision of its personnel policy because that policy does not confer any contractual rights on its employees. We disagree. In *Kentucky Unemployment Insurance Commission v. Goode*, 631 S.W.2d 28 (Ky.App.1982), employees at Whirlpool Corporation's Danville, Kentucky, plant sought payment of unemployment compensation benefits during a two-week period when the plant was shut down. The Court of Appeals noted that a company handbook given to all new employees provided that "[t]he company reserves the right to close the plant for a prescribed period of time each year, and to require employees to take their vacations during such period." *Id.* at 29. The panel upheld the Unemployment Insurance Commission's conclusion that this provision in the handbook was a part of the employment contract. *Id.* at 30. "In effect, the employees agreed to the shutdown and vacation provisions by their acceptance and retention of their employment." *Id.* at 29. The same reasoning applies here.

■ An express personnel policy can become a binding contract "once it is accepted by the employee through his continuing to work when he is not required to do so." *Hoffman–La Roche, Inc. v. Campbell*, 512 So.2d 725, 733 (Ala.1987). *See also Dahl v. Brunswick Corp.*, 277 Md. 471, 356 A.2d 221, 224 (1976) ("[T]here is abundant support for the proposition that employer policy directives regarding aspects of the employment relation become contractual obligations when, with knowledge of their existence, employees start or continue to work for the employer."); *Toussaint v. Blue Cross & Blue Shield of Mich.*, 408 Mich. 579, 292 N.W.2d 880, 885 (1980) ("[S]uch a provision may become part of the contract either by express agreement, oral or written, or as a result of an employee's legitimate expectations grounded in an employer's policy statements."); *Southwest Gas Corp. v. Ahmad*, 99 Nev. 594, 668 P.2d 261, 261 (1983) ("Her continued employment after formal delivery of the handbook provides sufficient consideration for modifying the employment agreement by inclusion of the handbook provisions."); *Cook v. Heck's Inc.*, 176 W.Va. 368, 342 S.E.2d 453, 459 (1986) ("We conclude that a promise of job security contained in an employee handbook distributed by an employer to its employees

constitutes an offer for a unilateral contract; and an employee's continuing to work, while under no obligation to do so, constitutes an acceptance and sufficient consideration to make the employer's promise binding and enforceable.").

> [E]mployer statements of policy ... can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee, and, hence, although the statement of policy is signed by neither party, can be unilaterally amended by the employer without notice to the employee, and contains no reference to a specific employee, his job description or compensation, and although no reference was made to the policy statement in preemployment interviews and the employee does not learn of its existence until after his hiring.

*Toussaint,* 292 N.W.2d at 892. The principle is akin to estoppel. Once an employer establishes an express personnel policy and the employee continues to work while the policy remains in effect, the policy is deemed an implied contract for so long as it remains in effect. If the employer unilaterally changes the policy, the terms of the implied contract are also thereby changed.

HAM's reliance on *Nork v. Fetter Printing Co.,* 738 S.W.2d 824 (Ky.App.1987), and *McCart v. Brown–Forman Corp.,* 713 F.Supp. 981 (W.D.Ky.1988), is misplaced. In *Nork,* a Court of Appeals panel considered three separate cases in which it was claimed that company policy expressed in an employee handbook or manual created an implied contract that overrode the terminable-at-will rule with respect to indefinite employment. In the first, the handbook expressed policies that the employer would merely strive to follow. The panel held this did not create an obligation on

the part of the employer to follow those policies. *Id.* at 825. In the second, the manual contained the following disclaimer:

> I understand that this manual is a summary of the policies and rules which guide [employer] in its relationship with its employees. It is not a contract of employment, and I do not construe it as such. I understand it is terminable at the will of either the employee or the employer.

*Id.* at 826.

Similarly, the third contained this disclaimer:

> It should be clearly understood that the continued employment of any associate of the Company will depend upon the successful performance of all work assigned to the associate, and the general following of the guidelines of this booklet, during a trial period of up to ninety (90) days, and upon the continued successful performance and the further need of the associate's continued employment by the Company.

*Id.* The panel held that the two disclaimers precluded the employees' claims that the handbook or manual constituted an agreement not to terminate the employment at will. *Id.* at 827.

In *McCart,* the application signed by the employee contained the following provision: "It is agreed and understood that by assigning any work ... that the relations between me and the Corporation shall be a hiring at will, terminable at any time by either of the parties thereto." The court held that the mere reference to "an employment contract" in a company handbook did not constitute an agreement superseding the terminable-at-will provision in the employment application form. 713 F.Supp. at 983.

Here, the language used in the personnel policy is not precatory, like that held to

be insufficient in the first policy addressed in *Nork,* and there is no disclaimer. The personnel policy adopted by HAM's board of directors created one rate of compensation for "on call" employees and another for "subject to call" employees. If a jury finds that Smith and Harrell were "on call" employees, the personnel policy created a contractual obligation to pay them at that rate.

Accordingly, the Court of Appeals is affirmed in both of these appeals and these cases are remanded to the Shelby Circuit Court and the Bell Circuit Court, respectively, for further proceedings in accordance with the content of this opinion.

All concur.