*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 06a0212p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JIM OAKS,

*Plaintiff-Appellant,*

*v.*

No. 04-6147

3M COMPANY,

*Defendant-Appellee.*

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 03-00389—Karl S. Forester, District Judge.

Submitted: March 9, 2006

Decided and Filed: June 28, 2006

Before: GIBBONS, GRIFFIN, and BRIGHT, Circuit Judges.[*]

---

**COUNSEL**

**ON BRIEF:** Robert E. Wier, RANSDELL & WIER, Lexington, Kentucky, for Appellant. Debra H. Dawahare, WYATT, TARRANT & COMBS, Lexington, Kentucky, for Appellee.

---

**OPINION**

---

BRIGHT, Circuit Judge. Jim Oaks appeals the district court's summary judgment dismissing his claims asking for damages for breach of contract, promissory estoppel, and a statutory claim for additional wages filed pursuant to Ky. Rev. Stat. § 337. Oaks contends the district court erred in granting summary judgment to 3M Company ("3M") because (1) jurisdiction was proper under Kentucky's wage and hour statute, Ky. Rev. Stat. § 337, and (2) 3M's employee manual provided sufficiently specific language to constitute a unilateral contract governing the parties' relationship, all of which entitled him to relief. We determine the appeal has merit, and we reverse and remand for further proceedings.

---

[*]The Honorable Myron H. Bright, Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

1

I.

3M employed Oaks for seven years as a machinery operator in its Post-It plant in Cynthiana, Kentucky. On two occasions, the company asked Oaks to assume certain maintenance duties at his plant on a temporary basis. Oaks accepted the temporary assignments, and he ultimately worked in this maintenance capacity for a total of two and a half years. During his first period in the temporary position, 3M paid Oaks at his original pay grade, Job Grade 8. During his second period in the temporary position, he asked for and received a slightly higher wage at Job Grade 10. Oaks contends that he was entitled to additional wages to be paid at Job Grade 40, the wage level of the maintenance craft workers whom he replaced. To support his argument, he points to language in the employee manual that states, "When you work in a higher classification, you will receive the rate of the higher classification, providing you work the majority of the shift in that classification."

Oaks filed this diversity suit against 3M for breach of contract, promissory estoppel, and violation of Ky. Rev. Stat. § 337, contending that 3M should have paid him at the Job Grade 40 wage level for the periods he worked in a maintenance capacity. The district court granted summary judgment to 3M, determining that no contract existed and no promise had been made to Oaks that he would be paid at the pay grade of the regular maintenance workers. The district court further determined that, because no contract existed, Oaks's claim based on Ky. Rev. Stat. § 337 was a statutory claim that first must be administratively exhausted in the Commonwealth of Kentucky. Oaks now appeals each of the district court's rulings.

II.

This court reviews de novo the district court's entry of summary judgment. *McWane, Inc. v. Fid. & Deposit Co. of Md.*, 372 F.3d 798, 802 (6th Cir. 2004). We also review de novo the district court's interpretation of state law. *Id.*

After the district court issued its order, the Kentucky Supreme Court decided *Parts Depot, Inc. v. Beiswenger*, 170 S.W.3d 354 (Ky. 2005). *Parts Depot* resolved the two issues presented in this case: (1) whether a trial court possesses "original subject matter jurisdiction over a wage and hour dispute between an employer and employee," and (2) whether an employment policy may grant contractual rights to employees. That case answered both issues in the affirmative, and those answers apply here.

First, *Parts Depot* settles the issue of whether the district court erred in determining it lacked jurisdiction to hear Oaks's statutory wage claim pursuant to Ky. Rev. Stat. § 337. *Parts Depot* held that section 337.385 (1) "unambiguously authorizes an uncompensated or undercompensated employee to sue the employer in 'any court of competent jurisdiction' for the amount due and unpaid, plus liquidated damages, costs, and attorney fees." 170 S.W.3d at 358. *Parts Depot* held that a plaintiff may file a wage claim in district court. Accordingly, the district court here erred in concluding that it lacked jurisdiction to hear Oaks's Ky. Rev. Stat. § 337 claim.

*Parts Depot* bears on the second point on appeal as well. Oaks contends that the district court erred in granting summary judgment on the issue of whether the employee manual constituted a contract. He maintains that 3M's employee manual contained sufficiently specific language to constitute a valid unilateral implied contract, which 3M breached by refusing to pay him at a higher pay grade. We agree that the language in 3M's employee manual may create an implied contract.

*Parts Depot* held that an employer's policy could confer contractual rights on its employees. 170 S.W.3d at 362. Specifically, the court stated, "An express personnel policy can become a binding contract 'once it is accepted by the employee through his continuing to work when he is not required to do so.'" *Id.* (quoting *Hoffman-La Roche, Inc. v. Campbell*, 512 So.2d 725, 733 (Ala. 1987)). The court held that Parts Depot's manual constituted an implied contract because the

language used in the manual was specific and contractual, rather than precatory, and because the manual contained no disclaimer stating, for example, that it was not a contract of employment. 170 S.W.3d at 363-64.

The *Parts Depot* court specifically distinguished its case from similar disputes in *Nork v. Fetter Printing Co.*, 738 S.W.2d 824 (Ky. Ct. App.1987), and *McCart v. Brown-Forman Corp.*, 713 F. Supp. 981 (W.D. Ky.1988). In *Nork*, the Kentucky Court of Appeals addressed three separate cases dealing with whether company policy expressed in an employee manual constituted an implied contract. With respect to the first case, the *Nork* court determined through an analysis of the nature of the manual's language that it did not create an implied contract. 738 S.W.2d at 825. The court reasoned that the language merely expressed policy statements that the management strove to follow. *Id.* The manual did not create a contract because the language it contained was not contractual in nature. *Id.*

In the other two cases under consideration, the *Nork* court determined that the employee manuals did not permit implied contracts because each contained a disclaimer. In one case, the manual specifically stated that it was not a contract of employment, the employee did not treat it as such, and the employee understood that his employment was terminable at will. 738 S.W.2d at 826. The other case had a similarly specific disclaimer dealing with the termination of employment. *Id.* The *Nork* court held that the two disclaimers precluded the employees' claims that the employee manual created an implied contract not to terminate the employment at will. *Id.*

In *McCart v. Brown-Forman Corp.*, the other case distinguished by *Parts Depot*, the employment application also contained a disclaimer. 713 F. Supp. at 983. *McCart* held that the mere reference to "an employment contract" did not, in itself, create an implied agreement. *Id.* at 982-83. The *Parts Depot* court determined that *Nork* and *McCart* were distinguishable because "the language used in [Parts Depot's] personnel policy is not precatory, like that held to be insufficient in the first policy addressed in *Nork*, and there is no disclaimer." 170 S.W.3d at 363-64.

III.

The manual in effect at the time of Oaks's temporary assignment stated the following in its Purpose section:

> This manual is intended as a guide for the production/maintenance/warehouse hourly-paid employees only. The policies and guidelines contained in this manual may, from time to time, need modification or updating as appropriate. Therefore, changes may be implemented as necessary and shall be communicated through the normal communication channels such as bulletin board announcements, manual supplements or team meetings.

J.A. at 25. Specifically relating to Oaks's claim, the manual also provided, "When you work in a higher classification, you will receive the rate of the higher classification, providing you work the majority of the shift in that classification." J.A. at 33.

Under *Parts Depot*, Oaks has retained a cause of action for breach of contract. The language in the manual uses contractual language that clearly and specifically addresses Oaks's claim; it does not contain the type of precatory language held to be insufficient in *Nork*. In addition, the employment manual contains no disclaimer, either in its Purpose section or elsewhere in the manual. The portion of 3M's employment manual indicating that employees temporarily working in a higher classification would correspondingly receive the higher classification pay could create a binding contract when Oaks accepted his temporary maintenance assignments and worked in a higher classification.

Thus, under Oaks's version of the facts, he worked as a maintenance employee and was entitled to be paid at Job Grade 40, notwithstanding that 3M paid him at a lesser rate.  3M, however, among other things, asserts that the work Oaks performed differed from the work performed by the maintenance craft workers and that Oaks's skills and work background did not entitle him to any wage other than that which he received.  These contentions present fact issues for resolution at trial.

IV.

Accordingly, we reverse the grant of summary judgment of dismissal and remand for further proceedings.